ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAR 1 3 2008
CLERK, U.S. DISTRICT COURT
By _____
         Deputy

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| vs. | ) Civil Action No. |
| | ) |
| RYAN M. REYNOLDS, JASON WYNN, | ) |
| CARLTON FLEMING, BEVERAGE CREATIONS, | ) **3-08CV0438-G** |
| INC., BELLATALIA, LP, WYNN INDUSTRIES, | ) Hon. |
| LLC, and THOMAS WADE INVESTMENTS, LLC | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission") alleges:

### SUMMARY

1. Currently, three stock promoters (Ryan Reynolds, Jason Wynn and Carlton Fleming) and a penny stock company (Beverage Creations, Inc., hereafter "BCI" or the "Company") are engaging in a scheme to sell BCI shares at inflated prices to public investors without providing the full and fair disclosures mandated by the federal securities laws. The promoters are engaged in a "pump and dump" of BCI stock, hyping the stock through spam emails and advertising mailers filled with specious claims while reselling millions of shares in their own accounts for substantial profits. For its part, BCI is misleading investors by disclaiming its relationship to the stock promoters.

2. There is an imminent risk that investors will be further harmed. Reynolds, Wynn and Fleming still hold millions of shares of BCI through their wholly-owned businesses

Bellatalia, LP ("Bellatalia"), Wynn Industries, LLC ("Wynn Industries") and Thomas Wade Investments ("TWI). In addition, BCI continues to be the subject of misleading promotions.

3. The Commission seeks a judgment against all Defendants for injunctions and civil penalties. In addition, the Commission seeks a judgment against Reynolds, Wynn, Fleming, Bellatalia, Wynn Industries, and TWI (referred to collectively as the "Promoter Defendants"), ordering penny stock bars and disgorgement of all ill-gotten and prejudgment interest, among other relief.

## THE DEFENDANTS

4. **Beverage Creations, Inc.**, a Delaware corporation, is a Minneapolis-based beverage company purportedly developing a proprietary sports drink. BCI was incorporated in June 2007, and in September 2007 became the surviving company from a merger with a corporate shell. BCI's stock was quoted by Pink Sheets, LLC under the ticker "BVRG" from January 30, 2008 until February 20, 2008, when Pink Sheets discontinued its quotation and labeled BCI's stock "Caveat Emptor." BCI continues to trade on the "gray market," an informal process of phoning unsolicited orders for securities not quoted in any quotation service. BCI does not have a class of registered securities with the Commission and does not make periodic filings with the Commission.

5. At all times relevant to this complaint, BCI has been a penny stock, as the company's net tangible assets and average revenue have been below the thresholds established under Section 3(a)(51) of the Securities and Exchange Act of 1934 [15 U.S.C. 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240.3a51-1], and the securities have traded at a price under $5 per share at all times since the stock began trading.

6.      **Jason Wynn**, age 25, of Plano, Texas, is a penny stock promoter and former used car salesman. He is also the sole owner and President of **Wynn Industries**.

7.      **Wynn Industries, LLC** is a Texas limited liability company that purchased 3,333,333 shares in BCI's stock offering in January 2008. **Jason Wynn** is the sole owner and President of Wynn Industries.

8.      **Carlton Fleming**, age 47, of McKinney, Texas, is a former stock broker. In 1992, the NASD (now known as the Financial Industry Regulatory Authority, "FINRA") fined and suspended Fleming for 10 days for abusive sales tactics and failing to keep records of customer complaints. Fleming is the managing member of Thomas Wade Investments, LLC, a company he operates with Ryan Reynolds.

9.      **Thomas Wade Investments, LLC** is a Texas limited liability company that purchased 3,333,333 shares in BCI's stock offering in January 2008. Carlton Fleming is the sole owner and managing member of TWI.

10.     **Ryan M. Reynolds,** age 36, of Dallas, Texas, is a former stock broker who was barred by the NASD from the brokerage industry on January 21, 2003. Reynolds is the sole owner of Bellatalia.

11.     **Bellatalia, LP** is a Texas limited partnership that purchased 3,333,333 shares in BCI's stock offering in January 2008. Bella GP, LLC is the sole general partner of Bellatalia. Ryan Reynolds is the President and Sole Member of Bella GP, LLC.

## JURISDICTION AND VENUE

12.     The Commission brings this action pursuant to authority conferred upon it by Section 20(b) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Securities and Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78u (d)(1)].

13.     This Court has jurisdiction over this action under the provisions of Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

14.     Venue is proper in this Court pursuant to Section 22 of the Securities Act [15 U.S.C. § 77u(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

15.     Defendants, directly and indirectly, have made and are making, use of the means and instrumentalities of interstate commerce and of the mails in connection with the acts, practices and courses of business alleged herein in the Northern District of Texas and elsewhere.

## FACTS

### BCI's Stock Offering to the Promoter Defendants

16.     BCI describes itself as a beverage company. It claims to be developing a proprietary sports drink that incorporates a canister of breathable, pressurized oxygen. The Company has no revenue from operations, has not manufactured or produced any proprietary sports drink, and offers no other products. As of December 2007, BCI had no production facilities.

17.     In December 2007, BCI's financial condition was such that the Company had lost $43,760 in the preceding three months. At that time, BCI had $14,500 in credit card debt, and had only $12,506 in its bank account.

18. In December 2007, BCI arranged to sell its common stock to Bellatalia, Wynn Industries, and TWI, business entities controlled by Reynolds, Wynn, and Fleming, respectively.

19. On December 17, 2007, Bellatalia, Wynn Industries, and TWI each executed subscription agreements with BCI, in which each agreed to purchase 3,333,333 shares of BCI's stock for two cents a share, a total offering price of $199,999. The agreements were signed by Reynolds, Wynn, and Fleming, respectively.

20. BCI's President and CEO, Robert Wieden, signed the December 17, 2007 subscription agreements on behalf of BCI. Those agreements stated that the offering was exempt from registration pursuant to two Texas state law exemptions, Texas Administrative Code Rule 109.4(b) and Rule 139.16, both of which address sales to accredited investors. [Tex. Admin. Code, tit. 7 § 109.4(b) and Tex. Admin. Code, tit. § 139.16].

21. In fact, Texas Administrative Code Rules 109.4(b) and 139.16 do not apply to BCI's January 2008 stock offering. [Tex. Admin. Code, tit. 7 § 109.4(b) and Tex. Admin. Code, tit. § 139.16].

22. The subscription agreements also stated that Wynn Industries, Bellatalia, and TWI (1) "will not engage in any activity that will constitute a distribution of the Shares," and (2) "ha[ve] not offered or sold any portion of the Shares to others or with a view to reselling or otherwise disposing of any portion of the Shares."

23. These representations were false at the time they were made.

24. BCI knew or should have known that the Promoter Defendants would sell their shares to the public market within a very short time of receiving them. On September 26, 2007, the Commission had sued Reynolds and Bellatalia, alleging that they had engaged in the unregistered resale of penny stock to the public with respect to six companies. See SEC v. Offill

et al., 07-cv-01643 (N.D. Tex) (Hon. Sidney A. Fitzwater). The Commission alleged that Reynolds earned over $3.4 million in net profits by reselling unregistered stock to the public in those offerings.

25. Further, BCI took several steps to facilitate the resale distribution of its stock by the Promoter Defendants:

    a. On December 17, 2007, BCI's CEO instructed the Company's transfer agent to deliver BCI shares "without restrictive legend" directly to the brokerage accounts of Bellatalia, TWI, and Wynn Industries. In another letter, he stated that the shares were "free trading" and "free and clear of any encumbrances."

    b. On December 17, 2008, BCI's outside counsel sent an opinion letter to BCI's transfer agent opining that the stock offering was exempt from registration and resale restrictions pursuant to the two aforementioned Texas state law exemptions referenced in the subscription agreements.

    c. In January 2008, BCI filed a limited disclosure form with Pink Sheets in order for the stock to be listed on that website.

26. On January 25, 2008, BCI distributed 9,999,999 BCI shares to the Promoter Defendants.

27. As BCI had requested, BCI's transfer agent issued the share certificates without a restrictive legend, and delivered them into the brokerage accounts of Bellatalia, TWI and Wynn Industries.

28. BCI did not exercise reasonable care to ensure that the Promoter Defendants would not engage in a distribution of BCI shares.

29. BCI failed to take any of the four steps required by Rule 139.16 for exercising reasonable care in an unregistered offering: (1) BCI did not instruct the Company's transfer agent to place a restrictive legend on the BCI stock certificates, (2) BCI did not issue a "stop transfer" instruction to its transfer agent, (3) BCI did not obtain a signed statement from the purchasers that the securities would not be resold without registration, and (4) BCI did not have reasonable grounds to believe that the purchase was for investment rather than for distribution.

30. BCI used the instrumentalities of interstate commerce to implement its January 2008 stock distribution, including letters mailed to its transfer agent in Washington, communications with its outside counsel in New York, and communications with Pinksheets in New York.

31. BCI did not file a registration statement or a Form D with the Commission in connection with its January 2008 offering to the Promoter Defendants.

32. On January 30, 2008, BCI issued a press release announcing that BCI had "initiated trading."

33. At the time of the January 30, 2008 press release, the only purportedly unregistered shares available to create a public market in BCI were the 9,999,999 shares issued to the Promoter Defendants, and 108,268 shares spread out over dozens of previous investors in the shell into which BCI had merged.

34. Through the January 30, 2008 press release, BCI facilitated the public distribution of BCI shares by the Promoter Defendants.

### Promoter Defendants Resell BCI Stock to the Public Without Registration

35. Within days of receiving their shares, the Promoter Defendants engaged in a widespread unregistered resale of BCI stock.

36. On January 30, 2008, just five days after receiving 9.99 million BCI shares, the Promoter Defendants sold 4.01 million of their shares into the market, at prices ranging from $.60 to $.64 per share, well more than the $0.02 per share they paid to BCI.

37. On that day alone, the Promoter Defendants generated over $2.46 million from BCI sales, a 3000% gain on their original $200,000 investment.

38. At all times relevant to the conduct of this complaint, Ryan Reynolds had trading authority over brokerage accounts for Bellatalia, Wynn Industries and TWI.

39. Reynolds also had trading authority for at least nine other brokerage accounts in the names of colleagues, family and friends.

40. The Promoter Defendants engaged in manipulative trading to give the appearance of increased demand for BCI stock. The Promoter Defendants induced their friends, family and others to purchase BCI stock. The Promoter Defendants also sold BCI stock to the accounts of friends and family that were under Reynolds' control.

41. For example, at 12:35 p.m. on January 30, 2008, Reynolds ordered 710,500 shares to be bought in three separate accounts owned by friends and family over which he has trading authority: 179,500 shares in the account of his step-father, and 418,000 and 113,000 shares in other accounts. Fifteen minutes later, Reynolds ordered 710,500 shares to be sold in equal installments from the three Promoter Defendant accounts: 236,833 from Bellatalia, 236,833 from TWI, and 236,834 from Wynn Industries.

42. On that same day, other friends and family of the Promoter Defendants purchased BCI shares. For example, Reynolds' father purchased 30,000 shares, Reynolds' stepfather purchased 93,000 shares, and Reynolds' assistant purchased 100,000 shares.

43. In the following weeks, the Promoter Defendants continued to sell shares from their own accounts at prices ranging from $1.00 to $1.25. Reynolds sold stock from the friend and family accounts where he had previously purchased BCI shares.

44. No registration statement was in effect for any of the Promoter Defendants' resales of BCI shares to the public.

45. The Promoter Defendants were underwriters who distributed BCI stock to the public. They underwrote the BCI offering by purchasing shares, through entities that they controlled, with a view to offering and selling the shares to others in connection with the distribution of the company's shares to public investors.

46. The Promoter Defendants resold their shares to the general public using the instrumentalities of interstate commerce, including (i) letters mailed and faxed to Minneapolis-based BCI to execute the subscription agreements, (ii) interstate communications with BCI's Washington-based transfer agent to receive the shares into their brokerage accounts, and (iii) interstate phone calls and e-mails to their Florida-based broker to direct sales and to receive sales confirmations.

### Wynn and Wynn Industries Promote BCI Stock

47. In or about February 2008, Wynn Industries launched a national promotional campaign to bolster BCI's share price.

48. In early February 2008, Wynn Industries distributed a full-color, promotional mailer nationwide. The promotional mailer stated that "EARLY INVESTORS COULD MAKE A FORTUNE WITH [BCI]" and "THIS STOCK COULD EXPLODE!" The mailer also predicted that BCI investors would realize gains of 250% in the first 30 days and 799% by 2009.

49. The last page of the mailer included a smaller-print disclosure, stating that Wynn Industries:

> Has received three million three hundred and thirty-three thousand shares of free-trading [BCI] stock that may be sold into the market at any time, without notice, for multiple purposes including, but not limited to: direct compensation, advertising costs, copywriting services, cost of production, mailing and other distribution expenses, as well as a fee for its services. . . [Wynn Industries] may also purchase or sell stock at any time without notice.

50. The disclaimer did not disclose Wynn Industries' true role in the BCI stock offering, and made no mention of the fact that Wynn Industries planned to sell its shares when demand was inflated by the promotional activity.

51. In addition, Wynn Industries used a penny stock promotion website, www.TheStockPic.com, to promote BCI stock. Since at least February 11, 2008, TheStockPic.com has displayed BCI as its "featured stock of the month," and has sent out at least six spam e-mails touting the investment opportunity. Ryan Reynolds' sister is the administrator of the website.

52. Wynn Industries ordered the development of the website, and has been billed for the website's monthly hosting fee.

53. In 2007, TheStockPic.com promoted other unregistered, penny stock offerings in which entities controlled by Wynn bought and sold shares.

54. Since active trading in BCI began on January 30, 2008, BCI's stock price has more than tripled, from an intraday low of $.55 per share on January 30, 2008 to its March 10, 2008 close at $1.83 per share.

55. During the week of February 14, 2008 alone, when the mailer and spam e-mail hit the market, BCI's stock price increased by 16.8% – from $1.07 per share on the morning of February 14, the date of the first spam e-mail, to $1.25 per share on February 21.

56. On February 15, 2008, TheStockPic.com distributed a spam email stating "DON'T take [BCI] off your radar! [BCI] DUE FOR ANOTHER RUN!!"

57. On February 20, 2008, in reaction to Wynn Industries' promotional activity, Pink Sheets discontinued its quotation of BCI stock and gave BCI its lowest rating of "Caveat Emptor."

58. Notwithstanding the discontinuation of BCI's quotation on Pink Sheets, BCI's stock price has continued to rise.

59. On February 29, 2008, TheStockPic.com distributed a spam email to investors stating that "[BCI] is on a roll… Now is good as ever."

60. Since the promotional campaign began, BCI stock has increased by over 60% – to $1.83 on March 10, 2008.

## Wynn's Challenge to the Commission's ConnectAJet.com, Inc. Investigation and BCI's False Press Release

61. Over five months ago, on October 1, 2007, the Commission suspended trading in the stock of ConnectAJet.com, Inc. ("CAJ") due to possible manipulative forces and deceptive practices affecting that company's stock.

62. On December 14, 2007, in connection with its investigation into CAJ, the Commission issued a subpoena to a financial institution seeking Wynn's personal bank records.

63. On December 21, 2007, Wynn filed a motion in the Northern District of Texas challenging the Commission's access to his financial records. The filing of Wynn's challenge made public the Commission's investigation of Wynn's conduct in connection with CAJ. On January 29, 2008, the Court dismissed Wynn's motion. See Wynn v. SEC, 3:07-cv-2157-K (N.D. Tex) (Hon. Ed Kinkeade).

64. On February 19, the Dallas Morning News reported Wynn's role in promoting ConnectAJet. Eric Torbenson, <u>SEC Says Connect-A-Jet May Have Broken Securities Laws</u>, The Dallas Morning News (Feb. 19, 2008).

65. On February 20, 2008, Dow Jones Newswires reported that Wynn and Wynn Industries were promoting BCI. Carol S. Remond, <u>In the Money: Promoter Under SEC Probe Touts Beverage Creations</u>, Dow Jones News Service (Feb. 20, 2008).

66. On February 21, 2008, in response to those media reports, BCI issued a press release disclaiming any relationship with Wynn. The release stated in relevant part:

> Beverage Creations is not, nor has it ever been, associated with any of Mr. Wynn's dealings or, to our knowledge, any other companies associated with him. Furthermore, there are no contracts or agreements between Mr. Wynn and Beverage Creations that would state otherwise. Additionally, there has not been a common stock transfer or transaction between Mr. Wynn, or any of his company's [sic], and Beverage Creations, Inc. or any of its affiliates.

67. The February 21, 2008 press release disclaiming BCI's affiliation with Wynn and Wynn Industries is false. <u>First</u>, BCI knew or should have known that the Company's CEO had signed a subscription agreement with Wynn Industries wherein Wynn Industries agreed to purchase BCI stock. <u>Second</u>, BCI knew or should have known that BCI's CEO had signed letters instructing BCI's transfer agent to deliver BCI shares to a brokerage account in the name of Wynn Industries and expressly stating that "share certificates registered in the name of Wynn Industries, LLC… are… free trading, fully-paid…with no restrictions." <u>Third</u>, BCI knew or should have known that Wynn Industries had purchased 3.33 millions shares of BCI, almost a third of BCI's purportedly unrestricted stock.

## COUNT I

### Defendants' Offer and Sale of Unregistered Securities
### in Violation of Sections 5(a) and 5(c) of the Securities Act

68. Paragraphs 1 through 67 are realleged and incorporated by reference.

69. The shares of BCI that Defendants offered and sold from January 2008 to the present are "securities" as that term is defined in Section 2(a)(1) of the Securities Act and Section 2(10) the Exchange Act [15 U.S. C. §§ 77b(a)(1) and 78(b)(10)].

70. Defendants used the instrumentalities of interstate commerce to effect the unregistered sale of BCI stock. Defendants executed subscription agreements using interstate faxes, and facilitated the share transfer through communications with BCI's transfer agent.

71. From January 2008 to the present, no registration statement was filed or in effect for the sale of BCI stock

72. From January 2008 to the present, no exemption validly has applied to the Defendants' sales of BCI stock.

73. By reason of the foregoing conduct Defendants violated and, unless restrained and enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Wynn and Wynn Industries' Fraud
### in Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

74. Paragraphs 1 through 67 are realleged and incorporated by reference.

75. As more fully described in paragraphs 47 through 60 above, Wynn and Wynn Industries, in connection with the purchase and sale of securities by the use of the means and

instrumentalities of interstate commerce and by use of the mails, directly and indirectly: have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact, and have omitted and are omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and course of business which operated and will operate as a fraud and deceit upon purchasers and sellers of such securities.

76. Wynn and Wynn Industries knew or were reckless in disregarding the facts and circumstances described in Paragraphs 1 through 67 above.

77. By reason of foregoing, Wynn and Wynn Industries have violated and are violating Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240 10b-5].

## COUNT III

### BCI's Fraud in Violation of
### Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

78. Paragraphs 1 through 67 are realleged and incorporated by reference.

79. As more fully described in paragraphs 61 through 67, from at least January 2008 through the present, BCI, in connection with the purchase and sale of securities by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly: have employed and are employing devices, schemes and artifices to defraud; have made and are making untrue statements of material fact, and have omitted and are omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and have engaged and are engaging in acts, practices and course

of business which operated and will operate as a fraud and deceit upon purchasers and sellers of such securities.

80. BCI knew or was reckless in not knowing of the activities described in Paragraphs 1 through 67 above.

81. By reason of foregoing, BCI violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240 10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Enter an Order of Permanent Injunction as to each Defendant, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, restraining and enjoining:

A. BCI, Wynn and Wynn Industries from violating Sections 5(a) and 5(c) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; and

B. Reynolds, Fleming, Bellatalia, and TWI from violating Sections 5(a) and 5(c) of the Securities Act.

### II.

Enter an Order requiring Reynolds, Wynn, Fleming, Bellatalia, Wynn Industries and TWI to disgorge all ill-gotten gains resulting from their participation in the conduct described above, including pre-judgment and post-judgment interest.

### III.

Enter an Order requiring the Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 77t(d) and 78u(d)(3)].

IV.

Enter an Order barring Reynolds, Wynn, Fleming, Bellatalia, Wynn Holdings and TWI from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act and Section 21 of the Exchange Act [15 U.S.C. §§ 77t(g) and 78u(d)(6)].

V.

Grant such other and further equitable relief as this Court deems appropriate and necessary.

Respectfully submitted,

**THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

Dated: March 13, 2008

By: One of its Attorneys

Jonathan S. Polish (IL Id # 6237890)
Tim Leiman (IL Id # 6270153)
Lori Vass (IL Id # 6293998)
Attorneys for Plaintiff
Securities and Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: 312-353-7390
Fax: 312 353-7398

**ORIGINAL**

CIVIL COVER SHEET   3-08CV-438-G

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### (a) PLAINTIFFS
United States Securities and Exchange Commission

### DEFENDANTS
Ryan M. Reynolds, Jason Wynn, Carlton Fleming, Beverage Creations, Inc. Bellatalia, LP, Wynn Industries, LLC, Thomas Wade Investments, LLC

**RECEIVED MAR 13 2008 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS**

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Dallas
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
United States Securities and Exchange Commission
175 West Jackson Boulevard, (Suite 900)
Chicago, IL 60604  312-353-7390

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [■] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ]1 | [ ]1 | Incorporated or Principal Place of Business In This State | [ ]4 | [ ]4 |
| Citizen of Another State | [ ]2 | [ ]2 | Incorporated and Principal Place of Business In Another State | [ ]5 | [ ]5 |
| Citizen or Subject of a Foreign Country | [ ]3 | [ ]3 | Foreign Nation | [ ]6 | [ ]6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ]110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ]610 Agriculture | [ ]422 Appeal 28 USC 158 | [ ]400 State Reapportionment |
| [ ]120 Marine | [ ]310 Airplane | [ ]362 Personal Injury— | [ ]620 Other Food & Drug | | [ ]410 Antitrust |
| [ ]130 Miller Act | [ ]315 Airplane Product | Med. Malpractice | [ ]625 Drug Related Seizure | [ ]423 Withdrawal | [ ]430 Banks and Banking |
| [ ]140 Negotiable Instrument | Liability | [ ]365 Personal Injury— | of Property 21 USC 881 | 28 USC 157 | [ ]450 Commerce/ICC Rates/etc. |
| [ ]150 Recovery of Overpayment | [ ]320 Assault, Libel & | Product Liability | [ ]630 Liquor Laws | | [ ]460 Deportation |
| & Enforcement of Judgment | Slander | [ ]368 Asbestos Personal | [ ]640 R.R. & Truck | **PROPERTY RIGHTS** | [ ]470 Racketeer Influenced and |
| [ ]151 Medicare Act | [ ]330 Federal Employers' | Injury Product | [ ]650 Airline Regs. | [ ]820 Copyrights | Corrupt Organizations |
| [ ]152 Recovery of Defaulted | Liability | Liability | [ ]660 Occupational | [ ]830 Patent | [ ]480 Consumer Credit |
| Student Loans (excl. vet.) | [ ]340 Marine | **PERSONAL PROPERTY** | Safety/Health | [ ]840 Trademark | [ ]490 Cable/Satellite TV |
| [ ]153 Recovery of Overpayment | [ ]345 Marine Product | [ ]370 Other Fraud | [ ]690 Other | | [ ]810 Selective Service |
| of Veteran's Benefits | Liability | [ ]371 Truth in Lending | | | [■]850 Security/Commodity/Exch. |
| [ ]160 Stockholders' Suits | [ ]350 Motor Vehicle | [ ]380 Other Personal | **LABOR** | **SOCIAL SECURITY** | [ ]875 Customer Challenge |
| [ ]190 Other Contract | [ ]355 Motor Vehicle | Property Damage | [ ]710 Fair Labor Standards | [ ]861 HIA (1395ff) | 12 USC 3410 |
| [ ]195 Contract Product Liability | Product Liability | [ ]385 Property Damage | Act | [ ]862 Black Lung (923) | [ ]891 Agricultural Acts |
| [ ]196 Franchise | [ ]360 Other Personal Inj. | Product Liability | [ ]720 Labor/Mgmt. Relations | [ ]863 DIWC/DIWW (405(g)) | [ ]892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ]864 SSID Title XVI | [ ]893 Environmental Matters |
| [ ]210 Land Condemnation | [ ]441 Voting | [ ]510 Motions to Vacate | [ ]730 Labor/Mgmt.Reporting | [ ]865 RSI (405(g)) | [ ]894 Energy Allocation Act |
| [ ]220 Foreclosure | [ ]442 Employment | Sentence | & Disclosure Act | **FEDERAL TAX SUITS** | [ ]895 Freedom of Information Act |
| [ ]230 Rent Lease & Ejectment | [ ]443 Housing/ | Habeas Corpus: | [ ]740 Railway Labor Act | | [ ]900 Appeal of Fee Determination Under |
| [ ]240 Torts to Land | Accommodations | [ ]530 General | [ ]790 Other Labor Litigation | [ ]870 Taxes (U.S. Plaintiff or Defendant) | Equal Access to Justice |
| [ ]245 Tort Product Liability | [ ]444 Welfare | [ ]535 Death Penalty | | | [ ]950 Constitutionality of |
| [ ]290 All Other Real Property | [ ]445 ADA—Employment | [ ]540 Mandamus & Other | [ ]791 Empl. Ret. Inc. | [ ]871 IRS—Third Party | State Statutes |
| | [ ]446 ADA — Other | [ ]550 Civil Rights | Security Act | 26 USC 7609 | [ ]890 Other Statutory Actions |
| | [ ]440 Other Civil Rights | [ ]555 Prison Condition | | | |

### V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [■] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

15 U.S.C.77e(a), 15 U.S.C. 77e(a), 15 U.S.C. 77e(c), 15 U.S.C. 78j(b) and 17C.F.R. 240 10b-5

### VII. PREVIOUS BANKRUPTCY MATTERS (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter previously adjudicated by a judge of this Court. Use a separate attachment if necessary)

### VIII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ]Yes [■]No

### IX. This case
[ ] is not a refiling of a previously dismissed action.
[ ] is a refiling of case number _____, previously dismissed by Judge _____

DATE: March 12, 2008

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*