UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3-08-CV-0384-B ECF |
| RYAN M. REYNOLDS, JASON WYNN, CARLTON FLEMING, BEVERAGE CREATIONS, INC., BELLATALIA, LP., WYNN INDUSTRIES, LLC and THOMAS WADE INVESTMENTS, LLC | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This is a securities fraud action in which Plaintiff Securities and Exchange Commission ("SEC") alleges violations of Sections 5(a), 5(c), and 10(b) of the Securities Exchange Act of 1934 ("Securities Act") and Rule 10b-5 against, *inter alia*, Defendant Jason Wynn and his company, Defendant Wynn Industries, LLC, ("Defendants") for their alleged participation in a penny stock scheme. Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendants filed the instant Motion to Dismiss (doc. 46) alleging failure to plead fraud with particularity and failure to state a claim upon which relief could be granted. Having considered Defendants' Motion to Dismiss (doc. 46) and all briefs, responses, and replies thereto (docs. 47, 63, 72), the Court finds that the Motion should be DENIED in part and GRANTED in part. Plaintiff's Section 10(b) and Rule 10b-5 claims are dismissed to the extent that they are based on affirmative misrepresentations, which the Court finds lack materiality as a matter of law. The

1

Section 10(b) claims based on omissions survive along with the claims under Sections 5(a) and 5(c) as set forth herein.

## I. BACKGROUND

SEC alleges that three stock promoters (Ryan Reynolds, Jason Wynn, and Carlton Fleming), their wholly-owned businesses (respectively, Bellatalia, Wynn Industries, and Thomas Wade Investments), and a penny stock company (Beverage Creations, Inc. or "BCI")[1] engaged in a scheme to sell unregistered shares of stock in BCI at inflated prices to public investors without providing fair and full disclosures.[2] (Compl. ¶ 1). This "pump and dump" method of distributing BCI stock was primarily effected by "hyping the stock through spam emails and advertising mailers filled with specious claims while reselling millions of shares in their own accounts for substantial profits." *Id*.

Defendant BCI was incorporated in Delaware in June 2007 and is a Minnesota-based company. (Compl. ¶ 4). BCI purports to be developing a sports drink that incorporates a canister of breathable, pressurized oxygen. (Compl. ¶ 16). However, BCI has no revenue from operations, has not manufactured or produced any proprietary sports drink, offers no other products, and as of December 2007, had no production facilities. *Id*. As of December 2007, BCI had lost $43,760 in the preceding three months, had $14,500 in credit card debt, and had

---

[1] BCI is considered a penny stock because the company's net tangible assets and average revenue has been below the thresholds established under Section 3(a)(51) of the Securities Act and Rule 3a51-1 thereunder, and the securities have traded at less than five dollars per share at all times since the stock began trading. (Compl. ¶ 5).

[2] The Court takes its factual account from Plaintiff's Original Complaint filed March 13, 2008 (doc. 1). Because the instant Motion only concerns Wynn and Wynn Industries, the Court's recounting of background facts will be limited to alleged facts pertaining to Wynn and Wynn Industries, all of which are taken as true under the Fed. R. Civ. P. 12 (b)(6) standard of review on a motion to dismiss.

$12,506 in its bank account. (Compl. ¶ 17). BCI does not have a class of registered securities with the SEC, and BCI does not make periodic filings with the SEC. (Compl. ¶ 4).

Nonetheless, on December 17, 2007, Bellatalia, Wynn Industries, and TWI executed subscription agreements with BCI, whereby each agreed to purchase 3,333,333 shares of BCI's stock for two cents a share – a total offering price of $199,999. (Compl. ¶¶ 18-20). The subscription agreements stated that the purchasers (1) "will not engage in any activity that will constitute distribution of the Shares," and (2) "ha[ve] not offered or sold any portion of the Shares to others or with a view to reselling or otherwise disposing of any portion of the shares." (Compl. ¶ 22). Despite these agreements that the Shares would not be distributed, BCI's CEO stated that the shares were sold "free and clear of any encumbrances," and in January 2008, BCI filed a limited disclosure with Pink Sheets, LLC so that the stock could be listed for trading on the Pink Sheets website.[3] (Compl. ¶ 25). On January 25, 2008, BCI distributed 9,999,999 BCI shares to the Defendants. (Compl. ¶ 26).

On January 30, 2008, Defendants Bellatalia, Wynn Industries, and TWI sold 4.01 million of their shares into the market at prices ranging from $.60 to $.64 per share, generating over $2.46 million from BCI sales in a single day. (Compl. ¶ 36). Bellatalia, Wynn Industries, and TWI made these sales in part based on their inducing of friends, family, and others to purchase BCI stock in order to give the appearance of heightened demand. (Compl. ¶¶ 40-43). No registration statement with the SEC was in effect when Bellatalia, Wynn Industries, and TWI

---

[3] BCI's stock was listed by Pink Sheets under the ticker "BVRG" beginning January 30, 2008. (Compl. ¶ 4). Pink Sheets discontinued quotation of BCI stock on February 20, 2008 and gave BCI its lowest rating of "Caveat Emptor." (Compl. ¶ 57). According to the SEC, Pink Sheet's discontinuation of quotation and "Caveat Emptor" rating were in reaction to Wynn Industries' promotional activities. *Id.*

3

resold BCI shares to the public. (Compl. ¶ 44). Bellatalia, Wynn Industries, and TWI utilized the instrumentalities of interstate commerce to re-sell their shares to the general public.[4] (Compl. ¶¶ 15, 46).

To facilitate the inflation of the value of the BCI shares and the demand for them, Wynn Industries launched a nationwide campaign promoting BCI's stock in or about February 2008. (Compl. ¶ 47). The first component of the promotional campaign was a full-color mailer distributed nationwide stating that "early investors could make a fortune with [BCI]" and "this stock could explode!" (Compl. ¶ 48). The mailer predicted that BCI investors would realize gains of 250% in the first thirty days and 799% by 2009. *Id*. The mailer's final page had a smaller-print disclosure stating that Wynn Industries:

> Has received three million three hundred and thirty-three thousand shares of free-trading [BCI] stock that may be sold into the market at any time, without notice, for multiple purposes including but not limited to: direct compensation, advertising costs, copywriting services, cost of production, mailing and other distribution expense, as well as a fee for its services. . . . [Wynn Industries] may also purchase or sell stock at any time without notice.

(Compl. ¶ 49). The SEC alleges that the disclaimer was misleading, because it did not reveal the true nature of Defendants' involvement with BCI and because "the fact that Wynn Industries planned to sell its shares when demand was inflated by the promotional activity" was omitted from the disclaimer. (Compl. ¶ 50). Wynn Industries also ordered the development of a penny

---

[4] Defendants Bellatalia, Wynn Industries, and TWI utilized means of interstate commerce including: (1) letters mailed and faxed to BCI's Minnesota office to execute the agreements, (2) interstate communications with BCI's Washington-based transfer agent in order to receive shares in their brokerage accounts, and (3) interstate phone calls and e-mails to Defendants' Florida-based broker to direct sales and receive sales confirmations. (Compl. ¶ 46).

stock promotional website, www.thestockpic.com, which listed BCI as its "featured stock of the month" from at least February 11 to March 12, 2008. (Compl. ¶¶ 51-52). At least six spam e-mails touting BCI stock were distributed via the website. *Id.* For instance, on February 15, 2008, the website distributed a spam e-mail stating, "don't take [BCI] off your radar! [BCI] due for another run!." (Compl. ¶ 56). On February 29, 2008, another e-mail was sent stating that "[BCI] is on a roll…now is good as ever." (Compl. ¶ 59).

BCI's stock price more than tripled since active trading began on January 30, 2008, and since Wynn and Wynn Industries' promotional campaign began, BCI stock increased by over sixty percent, to $1.83 on March 10, 2008.[5] (Compl. ¶¶ 56, 60).

## II. ANALYSIS

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the Plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The Court does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). A 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). The Court's review is limited to the allegations in the complaint and to

---

[5] As further evidence of the significant effect of Wynn's promotional activities, the SEC notes that during the week of February 14, 2008 alone, when the full-color mailer and the first promotional e-mail were distributed, the stock price increased by 16.8%. (Compl. ¶ 55).

5

those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). In considering a 12(b)(6) motion, "the issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

In a securities fraud action, the Court also accounts for the heightened pleading requirements for allegations of fraud under Rule 9(b).[6] Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The amount of particularity required for pleading fraud or mistake differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific."). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Said another way, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

---

[6] Because this action is brought by the SEC, the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, are inapplicable. *See SEC v. Kornman*, 391 F. Supp. 2d 477, 494 (N.D. Tex. 2005)("Defendant is erroneously relying on the heightened pleading standards from private securities litigation under the [PSLRA]. These standards only apply in private actions and not SEC enforcement actions.").

Although 9(b) heightens the pleading requirement, it is not intended "to procure punctilious pleading detail." *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990). Rule 9(b) should be "read in conjunction with [Rule] 8, which requires only a short and plain statement of the claims showing that the pleader is entitled to relief." *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990).

A. *Violations of Section 5(a) and 5(c)[7]*

To establish a prima facie case of a violation of Section 5, the SEC must prove: (1) no registration statement was in effect with respect to the securities at issue, (2) the defendants sold or offered to sell the securities, and (3) interstate transportation, communications, or the mail was used in connection with the sale or offer of sale. *SEC v. Continental Tobacco Co. of S. Car.*, 463 F.2d 137, 155 (5th Cir. 1972). The Complaint sufficiently alleges each element of the claim

---

[7] Section 5 of the Securities Act provides, in pertinent part, that:

> (a) Sale or delivery after sale of unregistered securities
> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly--(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.
>
> . . .
>
> (c) Necessity of filing registration statement
>
> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security…

15 U.S.C. § 77e(a), (c).

for violations of Section 5.  The SEC clearly alleges: (1) that no registration statement was in effect with respect to BCI stock (Compl. ¶¶ 4, 35, 44, 71); (2) that Defendants sold or offered to sell the securities (Compl. ¶¶ 1, 35-46, 68-73); and (3) that "the instrumentalities of interstate commerce were used to effect the unregistered sale of BCI stock." (Compl. ¶¶ 15, 46, 70).  Once a prima facie case is established, the burden shifts to Defendants to prove that their acts fall within an exemption to Section 5.  *Continental Tobacco*, 463 F.2d at 156.   Defendants argue that the Section 5 claims should be dismissed, because the BCI stock sale is covered under Rule 504, which exempts stocks from registration under certain circumstances.  17 C.F.R. § 230.504.  See Defs.' Mot. to Dismiss 7-8. Defendants cite no facts in the Complaint to support their argument, which is clearly one more appropriately made with the submission of evidence at a later phase of these proceedings.  The pleadings do not establish the applicability of the cited exemption.  Thus, Plaintiff's claims under sections 5(a) and (c) will not be dismissed.

### B. *Violation of Section 10(b) and Rule 10b-5*[8]

---

[8] Section 10(b) of the Securities Act, as amended, provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange –
> . . .
> (b) To use or employ, in connection with the purchase or sale of any security…any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1934) (amended 2000).  Pursuant to its Section 10(b) rulemaking authority, the SEC has adopted Rule 10b-5 which provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact

8

To state a claim under § 10(b) and Rule 10b-5, the SEC must allege that Defendants: (1) used a fraudulent device, made a material misrepresentation or omission, or committed an act that operated as fraud or deceit, (2) in connection with the purchase or sale of securities, and (3) acted with scienter. *SEC v. Gann*, No. 3:05-CV-0063-L, 2008 WL 857633, at *9 (N.D. Tex. Mar. 31, 2008). The SEC is not required to allege or prove that investors relied on the misrepresentations. *SEC v. Hopper*, No. 04-1054, 2006 WL 778640, at *9 n. 15 (S.D. Tex. Mar. 24, 2006).

   a. *Materiality of Misrepresentation or Omission*

Defendants argue on several grounds that the misrepresentations or omissions alleged by the SEC are not actionable. Essentially, Defendants contend that any statements they made in promotional materials are forward-looking, non-actionable "puffery" and that the SEC failed to allege that any omitted or misrepresented information was material. Defendants also argue that the SEC does not allege how it knew that Defendant Wynn Industries planned to sell its shares when demand was inflated or why that was a material fact.

A misstatement or omission is material if there is a substantial likelihood that a reasonable investor would consider the information to be important in making an investment decision. *R&W Technical Servs., inc. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 169 (5th Cir. 2000) *citing TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); see also *Basic*

---

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

9

*Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) ("[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available"). "Materiality is not judged in the abstract, but in light of the surrounding circumstances." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993)). It is well-established that, "[b]ecause materiality is a mixed question of law and fact, it is usually left for the jury." *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996). However, it is possible that statements may be determined immaterial as a matter of law and thus a claim dismissed when it is solely supported by immaterial statements. *ABC Arbitrage Plaintiffs Group v. Tchruck*, 291 F.3d 336, 359 (5th Cir. 2002)(dismissing section 10(b)/Rule 10b-5 claims finding no materiality for statements in financial reports projecting double digit sales growth). Projections of future performance generally are not actionable under the securities laws, unless they are false when made. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 524 (5th Cir. 1993).

Defendants assert that statements made in the mailer and e-mails (Compl ¶¶ 48, 51, 56, 59) are too broad and generalized to be actionable and are instead non-actionable puffery as a matter of law. Statements "are non-actionable puffery [if] they are 'of the vague and optimistic type that cannot support a securities fraud action . . . and contain no concrete factual or material misrepresentation.' " *Southland*, 365 F.3d at 372 (ellipsis in original) (quoting *Lain v. Evans*, 123 F. Supp. 2d 344, 348 (N.D. Tex. 2002)). The kind of representations that courts find immaterial as a matter of law are "a certain kind of rosy affirmation . . . so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *Milano v. Perot Systems Corp.*, No.

10

3:02-CV-1269-D, 2006 WL 929325, at *6 (N.D. Tex. Mar. 31, 2006). In *Milano*, the court held that a company's statements that they employed people of "strong character" were too general to be material and that statements regarding the hiring of quality of employees' character would not have been significant to a reasonable investor. *Id.* at *7.

Defendants' argument by analogy to *Milano* and the cases cited therein is well taken. The only affirmative misrepresentations alleged by the SEC in the Complaint are (1) the promotional mailer statements that "early investors could make a fortune with [BCI]," "this stock could explode," and predictions of investment gains of 250% in the first 30 days and 799% by 2009 and (2) email statements of "Don't take BCI off your radar! [BCI] due for another run" and "[BCI] is on a roll...Now is good as ever." Even more so than in *Milano*, these statements are not the type of representations that a reasonable investor would consider in determining whether to invest in BCI. None of these statements reference BCI itself, its personnel, business plans, capitalization, or any actual facts upon which an investor might evaluate a business. A reasonable investor relies on common sense and objective facts, not on speculation as to stock price or potential–particularly when that speculation is not accompanied by any substantive information about the business.

The SEC addresses these statements only in a footnote, arguing that predictive statements are actionable under certain circumstances. As noted above, the Fifth Circuit has stated that predictive statements can be actionable if they are false when made–a determination based on the nature of the prediction, whether it was made in good faith, and whether it has a sound basis. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 204 (5th Cir. 1988). The SEC did not plead that any of the statements at issue were false when made. Indeed, considering that the

11

pump and dump scheme alleged by the SEC depends in part on inflating the value of a stock, it seems more likely that the Wynn Defendants believed at least some of these statements, such as that early investors could make a fortune, that the stock could explode, and that the stock was on a roll, to be true. Even if the SEC had pleaded that any of the statements were false when made, as a matter of law, no reasonable investor would find such generic predictions actually significant and therefore material in their decision making. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870 (5th Cir. 2003) (noting, *inter alia*, that a representation that the company was "making steady progress" was precisely the type of generalized positive characterization that is immaterial). Thus, the section 10(b)/Rule 10b-5 claim based on the affirmative statements cited by the SEC in its Complaint cannot stand.

On the other hand, the SEC's allegation that Defendants failed to disclose their true intention to "pump and dump" the stock alone could be a material omission. A reasonable investor would likely find the fact that Defendants planned to liquidate their stock holdings after elevating the price to be material. More than that, the fact that Defendants were encouraging recipients of promotional mailers and thestockpic.com e-mails to buy stock at the same time that they were selling their stock would be material to reasonable investors. *See, e.g., SEC v. Corp. Relations Group*, No. 6:99CV1222ORL28KRS, 2003 WL 25570113 (M.D. Fla. Mar, 28, 2003) (the fact that defendants "were selling their stock at the same time they were encouraging their readers to buy would clearly be material to reasonable investors"); *SEC v. Huttoe*, No. 96-2543, 1998 U.S. Dist. LEXIS 23211, at *19 (D.D.C. Sept. 14, 1998) ("[T]he fraud lies not in [the] practice of selling stocks contrary to [the newsletter's] recommendations, but in the failure to

12

disclose that practice to potential investors and readers. The practice reflects on the objectiveness of the investment advice and is therefore material.").

Without determining whether the alleged omission on which the SEC relies will ultimately entitle it to relief, the omission is a sufficient misrepresentation under section 10(b) and Rule 10b-5 to survive Defendants' 12(b)(6) motion. *See Fener v. Belo Corp.*, 513 F. Supp. 2d 733, 746 (N.D. Tex. 2007) (declining to rule on the materiality of statements or omissions at the motion to dismiss stage of the case after finding that the court could not "say on the basis of plaintiffs' complaint and defendants' answer that each alleged misrepresentation is immaterial as a material as a matter of law."); *See also Barrie v. Intervoice-Bright, Inc.*, 397 F.3d 249, 257 (5th Cir. 2005) (holding that the determination as to whether the allegations in the complaint sufficiently establish materiality is best left to resolution by a dispositive motion.).

b. *Scienter*

Further, Defendants move to dismiss the SEC's 10(b) and 10b-5 claims alleging that the SEC did not sufficiently plead scienter. Defendants argue that (1) the SEC did not allege that Defendants made highly unreasonable omissions or misrepresentations that involved an extreme departure from ordinary care, (2) that the SEC did not properly assert that Defendants had the intent to deceive, manipulate, or defraud and (3) that the SEC relies upon conclusory allegations rather than facts. The SEC counters that the Complaint alleges sufficient facts to show an inference of fraud and scienter and to indicate that Defendants' conscious behavior, including conducting a multi-media stock promotion campaign, is indicative of Defendants' motive and intent to deceive.

Scienter, in relation to securities fraud, is "the intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976). Under Rule 9(b), this intent "may be averred generally." Fed. R. Civ. P. 9(b). The SEC must establish that Defendants acted with scienter, that is "severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Southland Secs. Corp.*, 365 F.3d at 366. The SEC need not allege strict intentional misconduct; it is enough to allege that the conduct at issue is an "extreme departure from the ordinary standards of care." *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997). In the Fifth Circuit:

> The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show a defendant's motive to commit securities fraud. Where a defendant's motive is not apparent, a plaintiff may adequately plead scienter by identifying circumstances that indicate conscious behavior on the part of the defendant, though the strength of the circumstantial allegations must be correspondingly greater. . . . If the facts pleaded in a complaint are peculiarly within the opposing party's knowledge, fraud pleadings may be based on information and belief.

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (citations omitted).

The plaintiff must allege facts sufficient to raise a strong inference of scienter with respect to each individual defendant because "group pleadings" are insufficient. *See Southland*, 365 F.3d at 364-65 (holding that plaintiffs claiming securities fraud against multiple defendants must

14

"distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud").[9]

In this case, the SEC has satisfied Rule 9(b) and has alleged sufficient specific facts against the Wynn Defendants to support an inference of conscious behavior, which evidences scienter under *Tuchman*. The timing of the Defendants' purchase and sale of BCI stock and the extensive promotional campaign conducted by Defendants in order to "pump" BCI's stock support an inference that Defendants had adequate scienter and provide strong circumstantial evidence as to Defendants' conscious behavior and motive. (Compl. ¶¶ 1, 47-60). In the present case, the SEC adequately pled scienter as to the Defendants by alleging they were severely reckless, at a minimum, based on their motive to commit fraud, as evidenced by their stock purchases and sales at suspicious times and in suspicious amounts, including when they were promoting the purchase of BCI stock while contemporaneously selling their stock to the very people to whom they were promoting it, and based on their alleged knowledge, or recklessness in not knowing, that BCI had no product and very little liquidity. (Compl. ¶¶ 16, 18-26, 47-60); *See, e.g., Corp. Relations Group*, 2003 WL 25570112, at *9 ("The Defendants' scalping practice – the acquisition of stock, followed by touting of that stock in an effort to drive up the price, followed by a sale of that stock at a substantial profit – shows an intent to manipulate the market in a manner proscribed by the securities laws.").

  c. *Plaintiff Pled 10(b) and 10b-5 with the Requisite Particularity*

---

[9]The Court expressly rejects the Wynn Defendants assertion that "there is no allegation directed at Wynn individually, but only towards Wynn Investments." (Defs.' Br. 6). The Complaint makes clear that the basis for liability of Mr. Wynn is due to his role and actions taken as the owner and President of Wynn Industries.

As discussed above, Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity, and in the Fifth Circuit, plaintiffs plead fraud by alleging facts that answer the "newspaper questions." In its Response, Plaintiff specifically addresses each of the requisite questions and cites to the corresponding paragraphs in the Complaint.[10]  (Pl.'s Resp. 4-5). Defendants replied, again asserting that the Complaint "merely makes conclusory allegations that cannot possibly withstand the pleading requirements, especially the requirement to plead fraud with particularity." (Defs.' Reply 1). The Court finds that the Complaint pleads fraud with more than enough particularity to survive this Motion to Dismiss by stating which statements or omissions were fraudulent, briefly explaining why the statements or omissions were fraudulent, stating when and where the statements were made, and who made them. Defendants are certainly on notice as to the crux of the allegations against them.

---

[10] The Response states that:
> Count II of the Commission's Complaint references Paragraphs 47-60 as the basis for its fraud claim. (Compl. ¶ 75). Those paragraphs specifically address each of the "newspaper questions":
> <u>Who</u>: Wynn and Wynn Industries (Compl. ¶¶ 47-52, 75);
> <u>When</u>: February 2008 (Compl. ¶¶ 48, 51);
> <u>Where</u>: In a mass promotional mailer that the Wynn Defendants distributed nationwide (Compl. ¶¶ 48-49) and through e-mails and website postings on thestockpic.com, a stock promotion website (Compl. ¶ 51)
> <u>What / How</u>: To "pump up" the share price of BCI, the Wynn Defendants distributed a promotional mailer touting BCI stock and predicting astronomical gains in BCI's share price. The promotional mailer included a supposed disclaimer, stating that Wynn Industries "Has received three million three hundred and thirty-three thousand shares of free-trading [BCI] stock that may be sold into the market at any time, without notice, for multiple purposes…" However, the disclaimer notably failed to disclose that Wynn Industries planned to sell its shares while demand was inflated by the promotional activity. (Compl. ¶¶ 48-50).

Pl.'s Resp. 4-5 (emphasis in original).

16

## III. CONCLUSION

For the reasons detailed above, the Court finds that the Complaint sufficiently states a claim for a violation of Sections 5(a) and 5(c) of the Securities Act and a violation of Section 10(b) and Rule 10b-5 based on omissions with the requisite particularity. Defendants' Motion to Dismiss (doc. 46) is therefore DENIED with respect to those claims. However, Defendants' Motion to Dismiss (doc. 46) is GRANTED with respect to the Section 10(b) and Rule 10b-5 claims based on the affirmative misrepresentations currently alleged in the Complaint, which fail for lack of materiality.

**SO ORDERED.**

**Dated: August 19, 2008**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE