UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-0438-B |
| RYAN REYNOLDS, ET. AL. | § § § | |
| Defendants. | § | |

## MEMORANDUM ORDER

This case involves an alleged penny-stock securities fraud scheme using a mass marketing campaign to sell unregistered securities at inflated prices. After agreeing to a preliminary injunction including an asset freeze during the pendency of this dispute, Defendants Carlton Fleming ("Fleming") and Thomas Wade Investments, LLC's ("TWI") (collectively, "Defendants") ask the Court to determine the value of certain of their assets in order to satisfy the asset freeze amount. Having considered Defendants' Second Amended Motion to Modify Asset Freeze (doc #94), Plaintiff Securities and Exchange Commission's Response thereto (doc #97), and all evidence and arguments in support and opposition, the Court finds that the Motion lacks merit and it is therefore DENIED as set forth below.

### BACKGROUND

On April 1, 2008, Defendants filed an Expedited and Agreed Order asking the Court to modify the temporary restraining order that had been entered in this matter, which had frozen all of Defendant's assets. Per the parties' agreement, on April 2, 2008, the Court entered an Order

modifying and extending the then-existing asset freeze so that only $1,110,131.56 of Defendants' assets remained frozen. The parties have since agreed that only $1,080,000 of assets should be frozen.

While working toward identifying the specific assets to be used to satisfy the asset freeze amount, Defendants and the SEC reached an impasse. Defendants offered (1) Defendant Fleming's personal residence and (2) a different residential lot under Fleming's control as sufficient assets. Although the parties agree to value the residential lot at $237,500, they do not agree on the value of Fleming's residence. The parties jointly agreed upon and hired appraiser Bryan Garrison from Box & Associates to appraise the Fleming home. The Box Appraisal valued the home at between $735,000 and $744,900. Defendants disagreed with this value and hired appraiser James Redish to perform a second appraisal. The Redish Appraisal values the Fleming home at between $920,000 and $971,000.

On July 18, 2008, Defendants filed the instant Motion asking the Court to allow the Fleming properties to be used to satisfy the asset freeze amount and then to otherwise lift the blanket asset freeze already in place. In a footnote in the Motion, the Defendants also note that they object to the agreed amount of $1,080,000 to the extent that it is being used to secure payment of civil penalties. (Defs.' Mot. at 6 n.2). After Defendants filed the instant Motion, the parties reached further resolution of the issues originally presented therein. On July 22, 2008, the parties submitted an agreed motion asking the court to modify the preliminary injunction asset freeze to unfreeze all assets except (1) the Fleming residence and (2) the residential lot and to allow them to deposit $97,600 for the Court to hold. (Doc # 95). The cash deposited with the Court represents the difference between the total asset freeze amount of $1,080,000 and the SEC's view of the maximum

value of the Fleming properties ($237,500 + $744,900 = $982,400). The Court entered an Order on July 23, 2008 allowing the requested modification and cash deposit and unfroze all other assets of Defendants. (Doc #96).

Thus, in addition to Defendants' footnote objection, the only issue apparently left for the Court to determine is whether the Fleming residence should be valued at an amount above $744,900 such that less than $97,600 needs to remain on deposit in order to satisfy the asset freeze amount.

## ANALYSIS

As an initial matter, the Court notes that Defendants agreed to have $1,110,131.56 of their assets frozen pending final resolution of this matter. *See* Doc #59 at Ex. A, p. 2., II. The Court entered an Order reflecting that agreement in April 2008. (Doc #62). Defendants and the SEC then modified that agreement to provide, *inter alia*, that only $1,080,000 of Defendants' assets would be frozen and asked the Court to enter an Order reflecting that agreement. *See* Doc #95 and n. 2 to Pl.'s Resp. The Court entered such an Order in July 2008. (Doc #96). At no time did Defendants reserve any right to challenge the propriety of the total asset freeze amount in either their April or July 2008 agreements, nor are there any relevant changed circumstances since Defendants' latest agreement. Defendants freely made an agreement with the SEC, which this Court approved, and they will not be allowed to unilaterally rewrite its terms. Further, even if Defendants had not agreed to the amount to be frozen, the Court has discretion to freeze assets to preserve funds, including funds to pay civil penalties in this type of case. *See, e.g., SEC v. Amerifirst Funding*, No. 3:07-CV-1188, 2007 WL 2192632, at *3 (N.D. Tex. July 31, 2007); *see also SEC v. Cherif*, 933 F.2d 403, 416 n. 15 (7th Cir. 1991); *SEC v. Unifund SAL*, 910 F.2d 1028, 1041-42 (2d Cir. 1990). The amount frozen will remain at the agreed upon value of $1,080,000.

Turning to Defendants' assertion that the value of the Fleming residence exceeds the $744,900 appraisal from Box & Associates, Defendants identify two respects in which they disagree with the Box Appraisal. Defendants first urge that the Box Appraisal is flawed because "it uses the lowest possible comparable homes." Defs.' Mot. at 5. Second, Defendants then argue, conclusorily, that the Box Appraisal "presents an unreasonably low value" of the Fleming residence. *Id.* In addition to relying on the Redish Appraisal value as evidence that the Box Appraisal must be incorrect, Defendants also point out that Fleming allegedly spent $218,000 improving the home, which he purchased allegedly for about $665,000 in 2006.[1] Defendants appear to assert that the Box Appraisal must also be incorrect because its maximum value of $744,900 is less than the amount that Fleming has allegedly spent on his home to date ($883,000). None of these arguments constitutes sufficient evidence to demonstrate that the Box Appraisal is flawed.

First, Defendants claim the Box Appraisal is flawed because "it uses the lowest possible comparable homes." However, the valuation in the Box Appraisal is based on four comparable homes, three of which are also used in the Redish Appraisal.[2] Thus, it seems that Defendants' real criticism is not the homes that were used, but the actual values calculated for them by Mr. Garrison in the Box Appraisal. Mr. Garrison's valuation of the homes differs from Mr. Redish's view in essentially three major respects: (1) Mr. Garrison adjusts the comparison of the four year old Fleming home to a new home by discounting 7% ($60,000) while Mr. Redish discounts by only about 0.5%

---

[1] Defendants submit no admissible evidence to support this purchase value. The closest evidence presented is the stated 2006 sales price in the Box and Redish Appraisals of $644,900. Defendants submit no evidence to support the $218,000 figure.

[2] These three homes used as comparables in both appraisals are 404 Isleworth Lane, 7003 Westchester Drive, and 7608 Harbor Town Drive.

($10,000), (2) Mr. Garrison does not adjust for the difference in outside acreage of the property while Mr. Redish adjusts the value of the smaller homes by $10,000 for about each 0.03 acres below the acreage of the Fleming home, and (3) Mr. Garrison values an additional garage at $15,000 compared to Mr. Redish's value of $2,500. There are other less substantial differences in the valuations as well, such as Mr. Garrison's use of $60/ft$^2$ v. Mr. Redish's use of $70/ft$^2$ when adjusting for differences in living space and Mr. Garrison's valuation for a pool and outdoor living space of $75,000 v. Mr. Redish's $65,000.[3]

The Court agrees with the SEC that Defendants bear the burden of showing that the Box Appraisal by Mr. Garrison is incorrect, particularly in light of their agreement to use Mr. Garrison as the appraiser. Defendants provide no testimony or explanation from Mr. Redish as to why Mr. Garrison's valuation is incorrect or why Mr. Redish used the numbers he used. Having received no evidence from Defendants, despite their burden, the Court has independently examined the appraisals and cannot say that the Box Appraisal is fatally flawed. With respect to the difference in new home valuation, the Court finds it likely that a buyer in the Isleworth area would be willing to pay more than $10,000 more for a new home compared to a home built in 2004. Mr. Garrison's adjustment of about $60,000 seems reasonable in this market of high-end homes with sales prices largely in excess of $700,000, and Defendants provide no explanation as to why it is not.

---

[3] The Court notes that the appraisers appear to disagree in at least two places as to whether homes have certain features, and this disagreement also leads to disparate valuations. First, Mr. Garrish states that the Fleming home has one fireplace and thus adjusts all other homes with more than one fireplaces by $2,500 per fireplace. Mr. Redish states that there are two fireplaces in the Fleming home and uses $1,500 for his adjustment. Second, Mr. Garrish apparently found that the home at 7003 Westchester Court had a comparable pool/spa/outdoor living space to the Fleming home, because he did not make adjustments to the value in that category. However, Mr. Redish viewed 7003 Westchester Court as inferior in those areas by $40,000. Defendants present no evidence to allow the Court to assess which expert is correct in his view.

Regarding Mr. Garrison's lack of adjustment for differences in outside acreage, the Court finds nothing inherently incorrect in this decision. The Court has taken judicial notice of publicly available information by reviewing the value of the Fleming lot as most recently appraised by the Collin County Appraisal District. The Court has also reviewed the value of the land for all of the homes on the same side of the street as the Fleming home on Isleworth Lane and notes that the appraised value of the land is the same for all of the lots, even though the evidence submitted by the appraisers shows that the lots are irregular in this subdivision. Thus, although it is not definitive evidence of the propriety of Mr. Garrison's decision, the fact that Collin County also assesses land value equivalently for homes on different sized lots in this area supports the methodology of the Box Appraisal. Again, Defendants present no evidence explaining why they believe Mr. Garrison is incorrect or why Mr. Redish chose to increase value based on different outside acreage.

Finally, with respect to the value of a garage, the Court finds Mr. Redish's value of $2,500 is, at best, a highly optimistic cost-to-build figure and not remotely equivalent to the value of the extra garage. The Court finds that in the Isleworth neighborhood in which the comparable homes appear to have at least four bedrooms, it is likely that families have children and may have either four cars or at least three cars and the need for additional storage space for recreational or household items. Thus, the value of the fourth garage space likely far exceeds the original cost to construct the space, which the Court finds would far exceed $2,500 in any event. Moreover, as is apparent from the pictures of the Fleming home and the comparable homes, the option of building another garage onto an existing home in this area is likely unavailable–thereby also increasing the value of an existing fourth space. The Court therefore does not find Mr. Garrison's use of $15,000 as the value of a fourth garage space to be unreasonable.

To the extent that Defendants argue that the Box Appraisal presents an unreasonably low value of the Fleming home merely because Fleming supposedly spent over $200,000 improving the home, that argument is not well-taken. First, while the cost of construction is relevant to valuation, both appraisers note that they believe that a direct sales comparison is more reliable than a cost-based approach. Second, just because a homeowner spends a lot of money on his home, the market may not automatically view the home as having an equivalent increase in value. This market perception is particularly telling here where as Mr. Garrison notes, there appears to be a 36 month supply of comparable homes in the market, including new construction.

## CONCLUSION

In short, Defendants present nothing more than a battle of the experts without providing any explanation from their appraiser Mr. Redish or any other source as to why the agreed-upon appraiser Mr. Garrison of Box & Associates was incorrect in any aspect of his appraisal. The mere fact that Mr. Redish disagrees with Mr. Garrison and that Defendants are unhappy with the Box Appraisal is not evidence that it is incorrect. As discussed above, there is no evidence to allow the Court to find that the Box Appraisal is fatally flawed. Thus, Defendants' Second Amended Motion to Modify the Asset Freeze is DENIED. Defendants' prior Motion to Modify the Asset Freeze (doc #83) is denied as moot.

**SO ORDERED.**

Dated: October 9, 2008

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE