UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 3-08-CV-0438-B |
| RYAN M. REYNOLDS, et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION

Before the Court is Defendants Jason Wynn, Wynn Industries, LLC and Wynn Holdings, LLC's Motion and Brief in Support of Their Motion to Dismiss Pursuant to FRCP 12(b)(6), filed February 23, 2009 (Doc. #187). Having considered the motion, response, reply, pleadings, applicable law, and the Court's prior memorandum opinion in this action, *S.E.C. v. Reynolds, et al.*, No. 3:08-CV-0438-B (N.D. Tex Aug. 19, 2008) (Doc. #107), 2008 WL 3850550 (N.D. Tex. Aug. 19, 2008) (hereinafter "*Reynolds I*"), the Court **DENIES** Defendants' motion as set forth herein.

I.

BACKGROUND

A.   *The Initial Complaint*

This is a securities fraud action. On March 13, 2008, Plaintiff Securities and Exchange Commission ("SEC") filed its initial complaint ("Complaint") against, *inter alia*, Defendant Jason Wynn ("Wynn") and his company Wynn Industries, LLC ("Wynn Industries"), alleging

1

violations of the federal securities laws, including Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5, in connection with Wynn's alleged participation in a penny stock scheme designed to generate millions of dollars. The SEC alleged that Wynn, Wynn Industries, and penny stock company Beverage Creations, Inc. ("BCI"), along with other Defendants, engaged in a scheme to sell unregistered shares of stock in BCI at inflated prices to public investors without providing fair and full disclosures. (Compl. ¶ 1). The SEC alleged that this so-called "pump and dump" method of distributing BCI stock was primarily effected by "hyping the stock through spam emails and advertising mailers filled with specious claims while reselling millions of shares in their own accounts for substantial profits." *Id*. The SEC also alleged that, beginning in February 2008, to facilitate the inflation of the value of the BCI shares and the demand for them, Wynn Industries launched a nationwide campaign promoting BCI's stock, which included a full-color mailer distributed nationwide stating that "early investors could make a fortune with [BCI]" and "this stock could explode!" (Compl. ¶¶ 47, 48). The mailer's final page had a small-print disclaimer (the "BCI disclaimer") stating that Wynn Industries:

> has received three million three hundred and thirty-three thousand shares of free-trading [BCI] stock that may be sold into the market at any time, without notice, for multiple purposes including but not limited to: direct compensation, advertising costs, copyrighting services, cost of production, mailing and other distribution expense, as well as a fee for its services. . . . [Wynn Industries] may also purchase or sell stock at any time without notice.

(Compl. ¶ 49). Wynn Industries also ordered the development of a penny stock promotional website, www.thestockpic.com, which listed BCI as its "featured stock of the month" from at least February 11 to March 12, 2008. (Compl. ¶¶ 51-52). BCI's stock price more than tripled

2

since active trading began on January 30, 2008, and since Wynn and Wynn Industries' promotional campaign began, BCI stock increased by over sixty percent, to $1.83 on March 10, 2008. (Compl. ¶¶ 56, 60).

The SEC alleged that the BCI disclaimer constituted a material omission in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, because, among other things, the disclaimer stated that Wynn Industries "may" sell its shares in BCI "at any time" when, in reality, Wynn was already selling millions of BCI shares and planned to liquidate the remaining shares so that he could profit from the price spike caused by his promotion. (Compl. ¶ 50). The SEC further alleged that the affirmative representations in the mailer such as "this stock will explode," were material and fraudulent misrepresentations in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

B.     *Wynn and Wynn Industries' Motion to Dismiss the Initial Complaint*

On April 7, 2008, Defendants Wynn and Wynn Industries moved to dismiss the SEC's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), arguing that the SEC had failed to allege how their failure to disclose their intent to liquidate their BCI stock holdings after elevating the price would be material to the reasonable investor, that the SEC failed to adequately plead scienter and failed to plead their Section 10(b) and Rule 10b-5 claims with the requisite particularity required by Rule 9(b). Wynn and Wynn Industries also argued that the predictions in their BCI promotional materials were not material to investors as a matter of law.

C.     *The Court's August 19, 2008 Opinion*

On August 19, 2008, the Court denied Wynn and Wynn Industries' motion to dismiss the SEC's Section 10(b) and Rule 10b-5 claims based on alleged omissions in the BCI disclaimer, stating:

> [T]he SEC's allegation that Defendants failed to disclose their true intention to "pump and dump" the stock alone could be a material omission. A reasonable investor would likely find the fact that Defendants planned to liquidate their stock holdings after elevating the price to be material. More than that, the fact that Defendants were encouraging recipients of promotional mailers and thestockpic.com e-mails to buy stock at the same time that they were selling their stock would be material to reasonable investors [. . . ] Without determining whether the alleged omission on which the SEC relies will ultimately entitle it to relief, the omission is a sufficient misrepresentation under section 10(b) and Rule 10b-5 to survive Defendants' 12(b)(6) motion.

*Reynolds I*, Slip Op. at 12-13 (internal citations omitted).[1] The Court also denied Wynn and Wynn Industries' motion to dismiss pursuant to Rule 9(b), stating:

> [T]he Complaint pleads fraud with more than enough particularity to survive this Motion to Dismiss by stating which statements or omissions were fraudulent, briefly explaining why the statements or omissions were fraudulent, stating when and where the statements were made, and who made them. Defendants are certainly on notice as to the crux of the allegations against them.

*Id.* at 16. Finally, the Court rejected Wynn and Wynn Industries' argument that the SEC had failed to adequately plead scienter:

> In the present case, the SEC adequately pled scienter as to the Defendants by alleging they were severely reckless, at a minimum, based on their motive to commit fraud, as evidenced by their stock purchases and sales at suspicious times and in suspicious amounts, including when they were promoting the purchase of BCI stock while contemporaneously selling their stock to the very people to whom they were promoting it, and based on their alleged knowledge, or recklessness in

---

[1] The Court, however, granted Wynn and Wynn Industries' motion insofar as it sought to dismiss the SEC's Section 10(b) and Rule 10b-5 claims based on affirmative misrepresentations, concluding that the predictive statements in the BCI promotional materials were non-actionable "puffery," lacking materiality as a matter of law. Slip Op. at 11-12. The Amended Complaint alleges Section 10(b) and 10b-5 violations based solely on omissions, and not affirmative statements.

> not knowing, that BCI had no product and very little liquidity. (Compl. ¶¶ 16, 18-26, 47-60).]

*Id.* at 15 (internal citations omitted).

C.    *The SEC's Amended Complaint*

On December 22, 2008, the SEC amended its complaint, adding, among others, Wynn Holdings, LLC ("Wynn Holdings") as a Defendant, and alleging that Wynn and Wynn Holdings violated Section 10(b) and Rule 10b-5 in connection with the purchase and sale of penny stock in another entity, ConnectAJet.com ("CAJ"). Amended Compl. ¶¶ 21-81. The CAJ "pump and dump" scheme alleged in the Amended Complaint is virtually identical to the BCI "pump and dump" scheme alleged in the initial Complaint. *See* Amended Compl. ¶¶ 74-81. Like the promotional campaign to promote BCI stock alleged in the initial Complaint, the SEC alleges in the Amended Complaint that to facilitate the inflation of CAJ stock and demand for the stock, Wynn and Wynn Holdings launched a promotional campaign, which included a mailer touting CAJ. The CAJ mailer contained a disclaimer, almost identical to the BCI disclaimer, which provided that Wynn Holdings:

> has received 10 million shared of CAJT stock that may be sold into the market at any time, without notice, for multiple purposes including, but not limited to: direct compensation, advertising costs, copyrighting services, cost of production, mailing and other distribution expenses, as well as a fee for its' [sic] services. [Wynn Holdings] has paid an advertising cost of nine hundred ninety thousand dollars to produce and distribute this public awareness mailer. [Wynn Holdings] may also purchase or sell stock at any time without notice.

Amended Compl. ¶ 74. Similar to the Section 10(b) and Rule 10b-5 allegations pertaining to the BCI disclaimer, the SEC alleges that the CAJ disclaimer violates Section 10(b) and Rule 10b-5 for the following reasons: the CAJ disclaimer is "incomplete and inaccurate" as it "omits that

5

Wynn Holdings was selling its stock at the same time it was encouraging recipients of the promotional materials to buy stock" (Amended Compl. ¶¶ 74-76); the "at any time" language fails to convey "that Wynn Holdings' sales were intentionally timed rather than coincidental with the publication of the mailer" (Amended Compl. ¶ 77); and the "disclaimer omits Wynn Holdings' true role in the CAJ stock offering: that it had purchased shares of stock from CAJ in an unregistered offering with the intention of underwriting a public offering." Amended Compl. ¶ 78. According to the SEC:

> These misstatements and omissions are material because a reasonable investor would find it important that (a) Wynn Holdings simultaneously recommended that investors purchase CAJ stock while it was dumping its own shares; (b) contrary to the "at any time" language, Wynn Holdings' sales of CAJ were intentionally timed; and (c) Wynn Holdings received its shares and promoted the stock as part of a calculated effort to take CAJ public through an unregistered offering.

Amended Compl. ¶ 80.  The SEC also alleges that Wynn and Wynn Holdings made "these misstatements and misleading omissions knowingly or with a reckless disregard for the truth." Amended Compl. ¶ 81.

On February 3, 2009, Defendants Wynn, Wynn Industries and Wynn Holdings (collectively, the "Wynn Defendants") moved to dismiss Count III of the Amended Complaint pursuant to Fed. R. Civ. P 12(b)(6) and 9(b).  After setting forth the applicable legal standards, the Court will address the Wynn Defendants' motion and the SEC's response.

## II.

## ANALYSIS

A.   *Federal Rules of Civil Procedure, Rule 12(b)(6) and Rule 9(b)*

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the Plaintiff. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). The Court does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004). A 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, __,127 S. Ct. 1955, 1974 (2007). The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). In considering a 12(b)(6) motion, "the issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996).

In a securities fraud action, the Court also accounts for the heightened pleading requirements for allegations of fraud under Rule 9(b). Rule 9(b) provides, in pertinent part, that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The amount of particularity required for pleading fraud or mistake differs from case to case. *See Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX*

7

*Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific."). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Said another way, the standard requires the Complaint to allege answers to "newspaper questions" ("who, what, when, where, and how") of the alleged fraud. *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

Although Rule 9(b) heightens the pleading requirement, it is not intended "to procure punctilious pleading detail." *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990). Rule 9(b) should be "read in conjunction with [Rule] 8, which requires only a short and plain statement of the claims showing that the pleader is entitled to relief." *Id.* (quoting *Landry v. Air Lines Pilots Ass'n Int'l AFL-CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)).

B.   *The Wynn Defendants' Motion to Dismiss Count III*

The Wynn Defendants contend that Count III should be dismissed under Rule 12(b)(6) since: (i) the CAJ mailer did not omit material information; (ii) the SEC has not adequately alleged scienter; and (iii) there are no allegations directed at Wynn individually. Def. Mot. at 4-5. The Wynn Defendants also move to dismiss Count III under Rule 9(b), arguing that the SEC has failed to plead fraud with the requisite particularity. *Id.* at 7. In opposition, the SEC argues that, undeterred by the Court's earlier decision in this case, "the Wynn Defendants have cloned their arguments, this time moving to dismiss Count III of the Commission's Amended Complaint – a count based on identical misrepresentations and omissions in a substantively identical mass mailer that Wynn used to 'pump' the stock of [CAJ]. Given the similarity of the claims,

[*Reynolds I*] applies with full force here, and the Wynn Defendants' Motion to Dismiss the Amended Complaint should be denied." Pl. Resp. at 2. The Court agrees.

  1.   *Rule 12(b)(6) Arguments in Support of Dismissal*

The Court turns first to the Wynn Defendants' argument that the Section 10(b) and Rule 10b-5 claims in Count III should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[2] The Wynn Defendants argue that, like the BCI disclaimer, the CAJ disclaimer was adequate to "convey the reality of stock sales. Because the SEC failed to point to failure to disclose, it failed to state a claim for which relief can be granted." Def. Mot. at 5; *see also* Reply at 3 (any alleged omissions in the CAJ disclaimer are not actionable since "the disclosure in the ConnectAJet advertisement specifically informs the reader of Wynn Holding, LLC's stock ownership quantity and active trading ability."). The Court rejects this argument for the reasons already set forth in *Reynolds I*, wherein the Court denied Wynn and Wynn Industries' motion to dismiss the Section 10(b) and Rule 10b-5 claims made in connection with the BCI disclaimer. *See Reynolds I*, Slip Op. at 9-13 (and cases cited therein). Suffice it to say, that the Wynn Defendants planned to liquidate their CAJ stock after elevating the price would arguably be material to a reasonable investor. Without determining whether the alleged omission in the CAJ disclaimer will ultimately entitle the SEC to relief, the Court concludes, as it did in connection with the BCI disclaimer, that the alleged

---

[2]   In *Reynolds I* (*see* Slip Op. at 9), the Court set forth the elements required to plead a viable claim under Section 10(b) and Rule 10b-5:

> To state a claim under Section 10(b) and Rule 10b-5, the SEC must allege that Defendants: (1) used a fraudulent device, made a material misrepresentation or omission, or committed an act that operated as fraud or deceit, (2) in connection with the purchase or sale of securities, and (3) acted with scienter. *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *SEC v. Gann*, 2008 WL 857633, at *9 (N.D. Tex. Mar. 31, 2008) (and cases cited therein).

omission is a sufficient misrepresentation under section 10(b) and Rule 10b-5 to survive the Wynn Defendants' 12(b)(6) motion.³

With regard to scienter, although noting that the Court in *Reynolds I* rejected Wynn and Wynn Industries' argument that the SEC failed to adequately plead scienter in the initial Complaint, the Wynn Defendants nevertheless reurge the same argument in their motion to dismiss Count III of the Amended Complaint. Def. Reply at 4-5. As the Wynn Defendants fail to advance any arguments which the Court did not already consider, and the SEC's fraud claims pertaining to the CAJ mailer and the BCI mailer are substantively identical, the Court rejects this argument for the reasons already set forth in *Reynolds I*. *See* Slip Op. at 13-15.

Finally, the Court rejects the Wynn Defendants' argument that the SEC's fraud allegations do not address Wynn individually. Count III expressly states that the fraud claim is directed at Wynn Holdings and Jason Wynn (Amended Compl. ¶¶ 229-31), and that Wynn Holdings is nothing more than Wynn's corporate proxy. Amended Compl. ¶¶ 3, 5, 9, 23. The SEC also alleges that Wynn, through Wynn Holdings, was responsible for the creation and distribution of the CAJ mailer which included the fraudulent disclaimer (Amended Compl. ¶¶ 50, 56-57, 74), and that Wynn and Wynn Holdings made the "misstatements and misleading omissions knowingly or with reckless disregard for the truth." Amended Compl. ¶ 81. In short, the Court agrees with the SEC that, "there is no question that Wynn has been put on notice that

---

³Whether the CAJ disclaimer was, in fact, adequate under the circumstances to convey the reality of Wynn and Wynn Holding's stock sales, as the Wynn Defendants argue (*see* Def. Reply at 3-4 and note 1), and ultimately distinguishable from the disclaimers contained in the securities cases relied upon by the SEC and the Court in *Reynolds I*, cannot be resolved on the pleadings, and is more appropriately considered at the summary judgment phase.

the Commission's fraud claim seeks to hold him individually liable for the misstatements and omissions in the CAJ mailer." Pl. Resp. at 8.

*2. Rule 9(b) Arguments in Support of Dismissal*

The Wynn Defendants also move to dismiss Count III under Rule 9(b), arguing that the SEC has failed to plead fraud with requisite particularity. As discussed above, Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity, and in the Fifth Circuit, plaintiffs plead fraud by alleging facts that answer the "newspaper questions." *See supra* at 8. The SEC, in response to the motion to dismiss, specifically addresses each of the requisite questions and cites to the corresponding paragraphs in the Amended Complaint.[4] Pl. Resp. at 3. As in *Reynolds I* (*see* Slip Op. at 16 and note 10), the Court determines that the Amended Complaint pleads fraud with more than enough particularity to survive the Wynn Defendants' Motion to Dismiss by stating which statements or omissions were fraudulent, briefly explaining why the

---

[4] The SEC states in its Response that:
> Count III of the Commission's Amended Complaint specifically addresses each of the "newspaper questions":
> <u>Who</u>: Wynn and Wynn Holdings (Amended Compl. ¶¶ 74, 81, 229);
> <u>When</u>: In an initial distribution of the mass mailer from August 23-30, 2008 (Amended Compl. ¶¶ 48, 51) and in a second distribution in mid-September 2008 (Amended Compl. ¶¶ 56-57);
> <u>Where</u>: In a mass promotional mailer that Wynn Defendants, through Wynn Holdings, distributed nationwide (Amended Compl. ¶¶ 51, 56-57, 74-79);
> <u>What / How</u>: To "pump up" the share price of CAJ, Wynn, through Wynn Holdings, distributed a promotional mailer touting CAJ stock and predicting astronomical gains in CAJ's share price. The promotional mailer included a supposed disclaimer, stating that Wynn Holdings "Has received 10 million shares of [CAJ] stock that may be sold into the market at any time, without notice, for multiple purposes…" However, the disclaimer notably failed to disclose that Wynn and Wynn Holdings planned to sell their shares while demand was inflated by their promotional activity and that [Wynn] received the shares as part of an effort to take CAJ public through an unregistered offering. (Amended Compl. ¶¶ 74-81).

11

statements or omissions were fraudulent, stating when and where the statements or omissions were made, and who made them. The Wynn Defendants are certainly on notice as to the crux of the allegations against them.

## III.

## CONCLUSION

For the reasons detailed above, the Court finds that the Amended Complaint sufficiently states a claim for a violation of Section 10(b) and Rule 10b-5 of the Exchange Act based on omissions, and pleads fraud with the requisite particularity under Fed. R. Civ. P. 9(b). Accordingly, the Court **DENIES** Jason Wynn, Wynn Industries, LLC and Wynn Holdings, LLC's Motion to Dismiss (Doc. #187).

SO ORDERED.

Dated: April 17, 2009

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE