IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| vs. ) | Civil Action No. 3:08-CV-0438-B |
| ) | |
| RYAN M. REYNOLDS, et al. ) | |
| ) | |
| *Defendants.* ) | |

## SECOND SUPPLEMENTAL DECLARATION OF JOHN E. KUSTUSCH

I, John E. Kustusch, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct and that, if called upon to do so, I could competently testify as follows:

1. I am employed as a Staff Accountant by the United States Securities and Exchange Commission (the "Commission" or "SEC") in its Chicago Regional Office, located at 175 West Jackson Boulevard, Suite 900, Chicago, Illinois, 60604. I have been employed with the Commission since August 2000.

2. My official duties with the Commission include participating in fact-finding inquiries and investigations to determine whether the federal securities laws have been, are presently, or are about to be violated, and assisting in the Commission's litigation of securities laws violations.

3. Before joining the Commission, I was a Senior Director in the Market Regulation Department of the Chicago Mercantile Exchange, where I worked for nineteen years. Before then, I was employed for five years as an investigator with the U. S. Commodity Futures

Trading Commission (the "CFTC"). In that capacity, I participated in fact-finding inquiries and investigations of potential violations of the federal commodities laws, and assisted in the CFTC's litigation of commodities laws violations.

4. In connection with the Commission's investigation and subsequent litigation involving trading in the common stock of Beverage Creations, Inc. ("BCI"), I was previously asked by SEC trial counsel to calculate the gain or loss realized by certain Defendants from the sale of BCI shares acquired from BCI at $0.02 per share, pursuant to subscription agreements with BCI. For that calculation, I used the modified FIFO ("first in, first out") method, which matches the earliest sell against the earliest buy, and vice versa, except for buys and sells done on the same day, which are matched against each other to the extent possible. In an August 22, 2008, **Memorandum Order Denying Defendants' Motion to Unfreeze or Modify Asset Hold** (Dkt. #110), this Court accepted the modified FIFO method as a reasonable approximation of ill-gotten gains from the Defendants' alleged violations.

5. More recently, SEC trial counsel asked that I calculate, using the same modified FIFO method, the gain or loss realized by Defendants Bellatalia, LP ("Bellatalia") and Lugano Funds, LLC ("Lugano") from the sale of shares they acquired through subscription agreements with three other companies: My Vintage Baby, Inc. ("MVBY"); Connect-A-Jet, Inc. ("CAJT"); and Alchemy Creative, Inc. ("ALMY"). Bellatalia maintained securities trading accounts with, among others, Legent Clearing ("Legent") and Fagenson & Co., Inc. ("Fagenson"). Lugano had securities accounts with Fagenson and another firm. To identify the transactions for the gain/loss calculations, I used subscription agreement information obtained variously from Fagenson, Reynolds, MVBY, and Bellatalia; monthly account statements

provided by Legent and Fagenson; and submissions to the SEC's electronic bluesheet system ("EBS") by Legent and Fagenson.

6. EBS is the principal means by which staff of the Commission request and receive electronic trading data from broker-dealers. The underlying account statements and EBS data are voluminous and I believe that the summary exhibits are fair and accurate summaries according to the criteria I was given.

7. For the convenience of the Court, the Commission is not attaching the voluminous account statements and EBS market data to this declaration. However, those records are available for examination and/or copying at the request of either the Court or the Defendants.

8. For the gain/loss calculation for the trading in each stock, I prepared a schedule showing, for each transaction: the trade date; brokerage firm (if more than one); transaction type; quantity; price; net proceeds from the subscription shares sold; the cost of the subscriptions shares sold; the gain/loss on the subscription shares sold; and the resulting long or short position in that stock in the account(s). By convention, sale quantities and short positions are reflected as negative numbers, in parentheses.

9. SEC trial counsel asked that in performing the gain/loss calculations, I subtract fees and commissions, estimating such fees when necessary. As it happens, for each purchase and sale on the account statements and EBS submissions, the dollar amount shown for that transaction includes commission and/or fee charge(s). Therefore, for the sales of subscription shares, I used the amounts on the statements and/or EBS submissions, or pro rata portions thereof. However, because the subscription shares were purchased directly from the issuing company, there were no charges imposed by Legent or Fagenson, and I calculated the purchase

cost by multiplying the number of shares bought by the price per share indicated in the subscription.

**PROFITS FROM THE SALES OF MVBY SUBSCRIPTION SHARES**

10. Attached as **Exhibit 1** is a true and correct copy of a subscription agreement between Bellatalia and MVBY dated June 1, 2007, by which Bellatalia agreed to buy 5,000,000 MVBY shares for $25,000, a per-share cost of $0.005. On June 13, 2007, five million MVBY shares were deposited into Bellatalia's account with Legent. Although there is no cost basis shown on the Legent statement for those shares, I used the subscription per-share price of $0.005 in the gain/loss calculations. Those five million were the "first in" shares of MVBY stock in Bellatalia's account with Legent. In July and August 2007, Bellatalia transferred its MVBY shares and cash balance from its Legent account to its Fagenson account.

11. After June 2007, Bellatalia entered into four additional subscription agreements to purchase MVBY shares. Within days after each subscription agreement date, shares in the same amount as the subscription were received in Bellatalia's account with Legent or with Fagenson. The dates, share quantities, costs, and per-share prices of Bellatalia's five subscription agreements with MVBY are summarized in the table below. The weighted average price of the 8.5 million MVBY shares Bellatalia bought through subscription was about 3 cents per share.

| Date | Share Quantity | Cost | Per-share Price |
|---|---|---|---|
| 1 Jun 07 | 5,000,000 | $25,000 | $0.005 |
| 26 Jun 07 | 500,000 | $35,000 | $0.07 |
| 31 Jul 07 | 1,000,000 | $70,000 | $0.07 |
| 18 Dec 07 | 1,000,000 | $70,000 | $0.07 |
| 7 Jan 08 | 1,000,000 | $70,000 | $0.07 |
| Totals: | 8,500,000 | $270,000 | |

12. Attached as **Exhibit 2** is a schedule showing my calculation of Bellatalia's net gain from the sale of its 8.5 million MVBY subscription shares. That gain was $3,993,303.

13. As reflected on **Exhibit 2,** Bellatalia held no MVBY shares as of mid-January 2008 in its Fagenson account. All of its subscription shares—as well as other shares it had purchased in the market—had been disposed of by mid-January. To my knowledge and belief, any other purchase or sale of MVBY shares by Bellatalia did not involve subscription shares.

**PROFITS FROM THE SALES OF CAJT SUBSCRIPTION SHARES**

14. Attached as **Exhibit 3** is a true and correct copy of a subscription agreement between Lugano and CAJT dated July 2007, by which Lugano agreed to buy 10,000,000 CAJT shares for $100,000, a per-share cost of $0.01. On August 17, 2007, ten million CAJT shares were deposited into Lugano's account with Fagenson. Although there is no cost basis shown on the Fagenson statement for those shares, I used the subscription per-share price of $0.01 in the calculation of Lugano's gain or loss from the sale of the CAJT subscription shares. Those ten million were the "first in" shares of CAJT stock in Lugano's account with Fagenson.

15. Attached as **Exhibit 4** is a schedule showing my calculation, again using the modified FIFO method, of Lugano's net gain from the sale of its CAJT subscription shares through March 13, 2008, the date of this Court's Temporary Restraining Order which barred Reynolds from participating in any further penny stock offerings. Including a deduction of $42,792.82 for the cost of its 4,279,282 unsold subscription shares as of that date, Lugano's gain from its CAJT subscription share sales was $3,175,405.

**PROFITS FROM THE SALES OF ALMY SUBSCRIPTION SHARES**

16. Attached as **Exhibit 5** is a true and correct copy of a subscription agreement between Bellatalia and ALMY dated December 3, 2007, by which Bellatalia agreed to buy

3,333,333 ALMY shares for $66,667, a per-share cost of $0.02. On December 5, 2007, the 3,333,333 ALMY shares were deposited into Bellatalia's account with Fagenson. Although there is no cost basis shown on the Fagenson statement for those shares, I used the subscription per-share price of $0.02 in the calculation of Bellatalia's gain or loss from the sale of those ALMY subscription shares. Those 3,333,333 were the "first in" shares of ALMY stock in Bellatalia's account with Fagenson.

17. Subsequently, Bellatalia entered into another subscription agreement to purchase one million ALMY shares. That subscription agreement was also signed in Reynolds' name, as the CEO of Bellatalia. In that instance, shares in the same quantity as the subscription were subsequently received in Bellatalia's account with Fagenson. The dates, share quantities, costs, and per-share prices of Bellatalia's two subscription agreements with ALMY are summarized in the table below. The weighted average price of the 4.33 million ALMY shares Bellatalia bought through subscription was about 3 cents per share.

| Date | Share Quantity | Cost | Per-share Price |
|---|---|---|---|
| 3 Dec 07 | 3,333,333 | $66,667 | $0.02 |
| 18 Dec 07 | 1,000,000 | $70,000 | $0.07 |
| Totals: | 4,333,333 | $136,667 | |

18. Attached as **Exhibit 6** is a schedule showing my calculation, again using the modified FIFO method, of Bellatalia's net gain from the sale of its ALMY subscription shares through March 13, 2008, the date of this Court's Temporary Restraining Order which barred Reynolds from participating in any further penny stock offerings. Including a deduction of $45,476.20 for the cost of its 649,660 unsold subscription shares as of that date, Bellatalia's gain from its ALMY subscription share sales was approximately $2,346,480.01.

**PROFITS FROM THE SALES OF BCI SUBSCRIPTION SHARES**

19. As mentioned in paragraph 4 herein, I was earlier asked by SEC trial counsel to calculate the gain or loss by several Defendants from their sale of subscription shares of BCI. Bellatalia was one of those Defendants. Attached as **Exhibit 7** is a true and correct copy of a subscription agreement between Bellatalia and BCI dated December 17, 2007, by which Bellatalia agreed to buy 3,333,333 BCI shares for $66,667, a per-share cost of $0.02. On January 28, 2008, the 3,333,333 BCI shares were deposited into Bellatalia's account with Fagenson. Although there is no cost basis shown on the Fagenson statement for those shares, I used the subscription per-share price of $0.02 in the calculation of Bellatalia's gain or loss from the sale of those BCI subscription shares. Those 3,333,333 were the "first in" shares of BCI stock in Bellatalia's account with Fagenson.

20. Attached as **Exhibit 8** is a schedule showing my calculation, again using the modified FIFO method, of Bellatalia's net gain from the sale of its BCI subscription shares through March 13, 2008, the date of this Court's Temporary Restraining Order which barred Reynolds from participating in any further penny stock offerings. Including a deduction of $36,397.46 for the cost of its 1,819,873 unsold subscription shares as of that date, Bellatalia's gain from its BCI subscription share sales was approximately $1,016,037.54.

21. As shown in the following table, the approximate aggregate gain by Bellatalia and Lugano from their sales of subscription shares of MVBY, CAJT, ALMY, and BCI was $10,531,226.

| Subscriber | Issuer | Gain from Sale of Subscription Shares |
|---|---|---|
| Bellatalia | MVBY | 3,993,303 |
| Lugano | CAJT | 3,175,405 |
| Bellatalia | ALMY | 2,346,480 |
| Bellatalia | BCI | 1,016,038 |
| | Total: | 10,531,226 |

## PRE-JUDGMENT INTEREST ON GAINS

22. SEC trial counsel also asked that I calculate pre-judgment interest (PJI) on the gains realized by Bellatalia and Lugano from their sales of subscription shares of MVBY, CAJT, ALMY, and BCI. SEC counsel directed me to begin each PJI calculation timeframe on the date of the last sale of MVBY, CAJT, ALMY, or BCI subscription shares by Bellatalia or Lugano, and end it on March 1, 2011. Attached as **Exhibit 9** are schedules I prepared that reflect the calculation of PJI based on the relevant IRS underpayment rates for the periods in question. **Exhibit 9** shows the period date ranges (a calendar quarter, or portion thereof), the annual interest rate, the period interest rate, and the period interest amount, with a running total of the principal and period interest in the last column.

23. As shown in the following table, the approximate prejudgment interest on the gains by Bellatalia and Lugano from their sales of subscription shares of MVBY, CAJT, ALMY, and BCI was $1,548,362. The total of their gains plus pre-judgment interest thereon was $12,079,588.

| Subscriber | Issuer | Gain from Sale of Subscription Shares | Date of Last Subscription Share Sale | Pre-judgment Interest to March 1, 2011 |
|---|---|---|---|---|
| Bellatalia | MVBY | 3,993,303 | 14-Jan-08 | 604,047 |
| Lugano | CAJT | 3,175,405 | 9-Jan-08 | 480,327 |
| Bellatalia | ALMY | 2,346,480 | 4-Mar-08 | 323,787 |
| Bellatalia | BCI | 1,016,038 | 14-Mar-08 | 140,201 |

| | | | |
|---|---|---|---|
| Total Gains: | 10,531,226 | Total Pre-judgment Interest: | 1,548,362 |
| | | **Total Gains + Pre-judgment Interest:** | **12,079,588** |

I, John E. Kustusch, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on the 23d day of March 2011.

							_____
							JOHN E. KUSTUSCH

**CERTIFICATE OF SERVICE**

   I hereby certify that on March 25, 2011, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                 /s/  Jonathan S. Polish