UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § § § § § § § | Civil Action # 3:08-CV-0438-B  ECF |
| Plaintiff, | | |
| v. | | |
| RYAN M. REYNOLDS, et al., | | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF RESPONSE OF DEFENDANTS RYAN M. REYNOLDS, BELLATALIA, L.P. AND LUGANO FUNDS, L.L.C. TO PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR SUMMARY JUDGMENT [Doc #253]**

Ryan M. Reynolds ("Reynolds"), Bellatalia, L.P. ("Bellatalia") and Lugano Funds, LLC ("Lugano"), (collectively "Reynolds Defendants"), file this Memorandum in Support of their Response to Plaintiff Securities and Exchange Commission's Motion for Summary Judgment, and show as follows:

In its Amended Complaint (Pleadings Doc # 164) Plaintiff Security and Exchange Commission (the "SEC" or "Commission") has sued Defendants Reynolds, Bellatalia and Lugano for violations of Sections 5(a) and 5(c) of the Securities Act (15 U.S.C. §77e(a) and 77e(c)) including related injunctive relief (see Amended Complaint, ¶¶ 217-221, and Prayer for Relief).

The Reynolds Defendants object to the gratuitous and irrelevant statements such as "Reynolds... stimulated demand for the companies' stock by inundating the

public with glossy mailers and spam e-mails." (See Doc #255, p. 2) which are untrue, do not form the basis of any count against the Reynolds Defendants in the Amended Complaint and thus are apparently there only for the purpose of attempting to prejudice this Court.

## ISSUES

The primary issue for the Reynolds Defendants is whether the Reynolds Defendants sold shares of the issuers' stock to the public while no registration statement was on file using the instrumentalities of interstate commerce. For the purpose of this Motion for Summary Judgment proceeding, the Reynolds Defendants are not contesting this prima facie case.

The Reynolds Defendants are claiming an exemption from registration under Section 4(1) of the Securities Act which provides that the registration requirements of Section 5 do not apply to "transactions" by any other person other than an issuer, underwriter, or dealer." 15 U.S.C. §77d(1). The Reynolds Defendants have never claimed to be or been alleged to be an issuer or dealer with respect to the transactions at issue in this lawsuit. Therefore, the issue of applicability of an exemption under Section 4(1) in this case turns on whether the Reynolds Defendants are "underwriters" with respect to the subject transactions.

Section 2(11) of the Securities Act defines "underwriter" as "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates... in any such

2

undertaking[.]" 15 U.S.C. §77b(11). The term "issuer" includes not only the issuing company, but also "any person directly or indirectly controlling or controlled by the issuer. Id. The statute does not define "distribution."

The statutes thus provide that transactions by issuers, underwriters and dealers, who clearly would be involved in the distribution process are not entitled to an exemption from registration. But transactions by persons other than an issuer, underwriter or dealer are specifically exempted from registration. The statute has been construed broadly enough to attempt to prohibit persons from structuring a transaction which in substance constitutes distribution, but can be argued to be exempt. (See *Geiger v. SEC*, 363 F.3d 481, 484 (D.C. Cir. 2004).

## REYNOLDS WAS AN INVESTOR

Exhibit 8 to the Memorandum of the SEC shows the sales and purchases of Beverage Creations, Inc. (BCI) stock by the Reynolds Defendants (specifically Bellatalia). This schedule shows quite a different picture than in *Geiger*, 363 F.3d @ 483 in which unregistered shares were issued to individuals all of which ended up directly in the hands of the investing public.

Considering the transaction between Bellatalia and BCI, Bellatalia purchased 333,333,333 shares of BCI stock, sold approximately 1,300,000 and then purchased approximately 775,000 shares and sold approximately 350,000 shares over the next two months then ceased trading. During the period that Bellatalia was purchasing

and selling stock, the number of shares was generally increasing and hovering around 2,500,000 shares.

The Commission argues in its Memorandum at page 19 that it is "undisputed"

> "The shares never came to rest with Bellatalia and Lugano. Rather than purchasing BCI shares intending to hold them as an investment and contrary to the clear language of his subscription agreements with the issuers, Reynolds instead flipped the shares to the public within days of receiving them."

This statement is not only NOT undisputed, it is inaccurate. Generally speaking, approximately 2/3 of the BCI shares purchased under the subscription agreement remained with Bellatalia. Looking at the overall picture as shown by the spreadsheet of BCI transactions, all of the shares did not end up with the public and Bellatalia continued to hold approximately 2/3 of the shares and trade the stock on a daily basis. Such activity could be seen by a reasonable juror as the activities of an investor/trader interested in his portfolio and day trading, not the activities of an underwriter interested in moving shares of BCI stock to the investing public. Therefore, there is at best a fact issue concerning whether the Reynolds Defendants are entitled to an exemption under Section 4(1) of the Securities Act as to its purchases of BCI stock under the subscription agreement.

Exhibit 6 to the Commission's Memorandum in Support of its Motion for Summary Judgment is a spreadsheet showing the transactions of Bellatalia involving Alchemy Creative, Inc. (ALMY) stock. Bellatalia received 3,333,333 shares on December 5, 2007 and 1,000,000 shares on December 31, 2007. As with BCI,

Bellatalia bought and sold ALMY stock on almost a daily basis maintaining an average of approximately 3,000,000 shares (or 2/3 of the 4,333,333 shares received as subscription shares) in the account.

At most about 1/3 of the subscription shares may have reached the public up until there was a drastic change in price of the shares as indicated at the end of Exhibit 6. Such a change in price could cause an investor to reasonably sell off his holdings. A reasonable juror could conclude that Bellatalia's actions appear with respect to ALMY stock to be more of an investor/trader than an underwriter, creating a fact issue as to whether Bellatalia is entitled to an exemption under Section 4(1) of the Securities Act.

Exhibit 2 to the Commission's Memorandum in Support of its Motion for Summary Judgment is a spreadsheet showing the transactions of Bellatalia involving My Vintage Baby, Inc. (MVBY) stock. Bellatalia received 5,000,000 shares on June 13, 2007 and additional shares at a later time. As with BCI, Bellatalia bought and sold MVBY stock on almost a daily basis maintaining an average of approximately 3,000,000 shares in the account.

At most about 40% of the subscription shares may have reached the public up until there was a drastic change in price of the shares as indicated in Exhibit 2. Such a change in price could cause an investor to reasonably sell off holdings. A reasonable juror could conclude that Bellatalia's actions appear to be more of an

investor/trader than an underwriter, creating a fact issue as to whether Bellatalia is entitled to an exemption under Section 4(1) of the Securities Act.

Exhibit 4 to the Commission's Memorandum in Support of its Motion for Summary Judgment is a spreadsheet showing the transactions of Lugano involving Connect A Jet, Inc. (CAJI) stock. Lugano received 12,700,000 shares on August 17, 2007. Lugano gave approximately 1,000,000 shares to personal friends and family members and traded the account on almost a daily basis maintaining an average of approximately 6,000,000 shares in the account.

At most about 40% of the subscription shares may have reached the public up until there was a drastic change in price of the shares as indicated in Exhibit 4. Such a change in price could cause an investor to reasonably sell off holdings. A reasonable juror could conclude that Bellatalia's actions appear to be more of an investor/trader than an underwriter, creating a fact issue as to whether Bellatalia is entitled to an exemption under Section 4(1) of the Securities Act.

When the overall transactions of the Reynolds Defendants are analyzed considering that significant percentages of the stock purchased remained in the account and that stock was purchased and sold from the open market as well, as set forth above a reasonable jury could conclude that Reynolds was an investor, not an underwriter. Therefore, there is a fact issue and the Motion for Summary Judgment of the SEC should be denied.

## EQUITABLE CONSIDERATIONS

In *SEC v. Czarnik*, No. 1:10-CV-00745-PKC, in the United States District Court of New York, Memorandum and Order filed November 29, 2010 in which the court held that SEC stated a claim against the attorney who drafted opinion letters and other documents related to the specific transactions at issue in this case because a reasonable fact finder could infer that the transfer agents would not have issued the securities without the documents. The SEC is claiming in one suit that the attorney was able to convince the professional transfer agents to issue securities without restrictive legends and yet the Reynolds Defendants are held to a higher standard by being required to somehow know that the stock received under the subscription agreement was not free trading stock as advertized.

The Reynolds Defendants have shown that a significant majority of the subscription stock was not sold to the public but for a significant amount of time remained in the accounts of the Reynolds Defendants. In the event that any equitable relief is considered, transactions involving stock not sold to the public or stock purchased on the open market should not be considered, and the fact that the Reynolds Defendants relied upon representations that the stock received was free trading stock.

The SEC's Motion for Summary Judgment should be denied.

Dated: April 14, 2011    Respectfully Submitted,

            By: /s/ David A. Carp
            **David A. Carp**
            State Bar No. 03836500
            **Herzog & Carp**
            P. O. Box 218845
            Houston, Texas 77218-8845
            713.781.7500 Phone
            713.781.4797 Fax

            LEAD COUNSEL FOR DEFENDANTS
            RYAN REYNOLDS, BELLATALIA, L.P.
            AND LUGANO FUNDS, L.L.C.

**CERTIFICATE OF SERVICE**

    This is to certify that on April 14, 2011 I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

Jonathan S. Polish, Esq.
John E. Birkenheier, Esq.
Linda T. Ieleja, Esq.
Tim Leiman, Esq.
Lori Vass, Esq.
US Securities & Exchange Commission
175 W. Jackson Blvd - Suite 900
Chicago, IL 60604

Spencer C. Barasch, Esq.
Kara Altenbaumer-Price, Esq.
Matthew G. Nielsen, Esq.
Andrews Kurth LLP
1717 Main Street
Suite 3700
Dallas, TX 75201

David R. Clouston, Esq.
Christopher R. Richie, Esq.
Shana L. Burleson, Esq.
Sessions, Fishman, Nathan & Israel LLP
900 Jackson Street - Suite 440
Dallas, TX 75202

Terence J. Hart, Esq.
Patrick K. Craine, Esq.
Robert M. Castle, III, Esq.
Bracewell & Giuliani LLP
1445 Ross Avenue - Suite 3800
Dallas, TX 75202

                                        /s/ David A. Carp
                                          David A. Carp