UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:08-CV-0438-B |
| RYAN M. REYNOLDS, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Securities and Exchange Commission's ("SEC") Renewed Motion for Summary Judgment against Defendants Ryan Reynolds ("Reynolds"), Bellatalia, LP ("Bellatalia"), and Lugano Funds LLC ("Lugano Funds) (collectively, "the Reynolds Defendants"), filed May 28, 2013 (doc. 331). For the reasons stated below, the SEC's Motion is **GRANTED**.

### I.

### BACKGROUND

This case concerns a "pump and dump" penny stock scheme. The SEC alleges that Defendants Ryan Reynolds, Jason Wynn, and Carlton Fleming and their wholly-owned businesses engaged in a scheme to sell unregistered shares of penny stocks in several small companies[1] at inflated

---

[1]According to the SEC, the entities' stocks are considered penny stocks because the companies' net tangible assets and average revenue have been below the thresholds established under Section 3(a)(51) of the Exchange Act and Rule 3a51-1 thereunder, 15 U.S.C. 78c(a)(51) and 17 C.F.R. § 240.3a51-1, respectively, and the securities have traded at less than five dollars per share at all times since the stocks began trading. *See* Am. Compl. ¶¶ 73, 121, 157, 159; *see also* SEC Mot. Br. 23 n.4. Reynolds does not dispute that the stocks at issue are penny stocks under applicable law.

prices to public investors without providing fair and full disclosures. Am. Compl. ¶ 1. This pump and dump method of distributing stock was allegedly effected by "hyp[ing] the shares through spam emails, an advertisement in USA Today, a commercial on CNBC, nationwide promotional mailers, and by inducing family and friends to create the appearance of market demand, while reselling millions of shares out of their own accounts for substantial profits." *Id.*

The SEC filed its Amended Complaint on December 22, 2008. The Amended Complaint alleges, *inter alia*, that Carlton Fleming and his wholly-owned businesses, Regus Investment Group, LLC and Thomas Wade Investments, LLC ( the "Fleming Defendants") and Defendants Reynolds and his wholly-owned companies Bellatalia and Lugano Funds, violated Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. § 77e ("Section 5"), by engaging in a scheme to sell unregistered shares of ConnectAJet.com, Inc. ("CAJ" or "ConnectAJet"), My Vintage Baby, Inc. ("MVBY" or "My Vintage Baby"), Alchemy Creative, Inc. ("Alchemy"), and Beverage Creations, Inc. ("BCI" or "Beverage Creations") to public investors without fair and full disclosures. Am. Compl. ¶¶ 217-221. It further alleges that Jason Wynn and his wholly-owned businesses, Wynn Industries, LLC, and Wynn Holdings, LLC (the "Wynn Defendants"), violated Sections 5(a) and 5(c) of the Securities Act, as well as Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. *Id.* at ¶¶ 217-221, 228-231, 232-235.[2]

In 2011 and 2013, the Court entered final judgment as to the Fleming Defendants and the

---

[2] The Fleming Defendants and the Wynn Defendants consented to final judgment and are no longer in this case. The Amended Complaint also contains allegations against Defendants Beverage Creations, Inc., Robert Wieden, and Patrick Dado (the "BCI Defendants"). In 2009, the BCI Defendants consented to final judgments including permanent injunctions and civil penalties without any admission of liability, and they are no longer in this case.

Wynn Defendants pursuant to separate but similar consents in which they agreed that they violated the federal securities laws as alleged in the complaint, specifically Section 5 as to the Fleming and Wynn Defendants and Section 10(b) and Rule 10b-5 as to the Wynn Defendants. The orders permanently enjoined them from violating the relevant securities laws and ordered disgorgement and prejudgment interest. The orders also imposed penny stock bars and civil penalties as to some of the Wynn and Fleming Defendants.

In the meantime, Reynolds was convicted in a criminal proceeding brought in the Southern District of Florida for a single count of conspiracy to commit securities fraud, to which he pled guilty. According to the parties' joint status report, "[t]he factual allegations in that indictment to which Reynolds pled guilty largely overlap with the SEC's factual allegations about the Connect-a-Jet offerings in this case." Joint Status Report Apr. 24, 2013 at 3. The Reynolds Defendants[3] have not consented to final judgment in this case.

The SEC filed the instant Renewed Motion for Summary Judgment seeking: (1) a permanent injunction against the Reynolds Defendants enjoining them from violating Section 5 of the Securities Act; (2) disgorgement of ill-gotten gains and prejudgment interest thereon; and (3) a penny stock bar.[4] Reynolds states that he does not oppose the SEC's requested remedies in connection with the ConnectAJet offering, though he does oppose the SEC's request for disgorgement and prejudgment

---

[3] Although at least some prior filings submitted by Ryan Reynolds' attorneys were submitted on behalf of Reynolds, Bellatalia, and Lugano Funds jointly, the most recent filing was submitted by Reynolds' attorneys only on behalf of Reynolds. There is no indication why this latest filing was not filed on behalf of Bellatalia and Lugano Funds as well.

[4] The Court previously denied without prejudice the SEC's Motion for Summary Judgment as to the Reynolds Defendants in light of Reynold's removal to the Southern District of Florida pursuant to his superseding criminal indictment. Order May 23, 2011.

interest with respect to the MVBY, Alchemy, and BCI offerings, and he also disputes the SEC's methodology as to its disgorgement calculations generally. The SEC's motion is now ripe for disposition.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990) Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## III.

## ANALYSIS

A.  *Evidentiary Objections*

As an initial matter, Reynolds objects to the SEC's Exhibits 1, 2, 5, 6, 7, 8, 10, and 11 submitted in support of the SEC's Motion for Summary Judgment. The SEC submits these documents as proof of the Reynolds Defendants' subscription agreements for the stocks at issue, as proof of the Reynolds Defendants' account activity, and as proof of the Reynolds Defendants' profits as a result of the stock offerings at issue. Reynolds objects to these documents as hearsay unsupported by a business records affidavit or other means of authentication.

The Court **OVERRULES** these objections. As discussed by the SEC, Reynolds produced the subscription agreements at issue and admitted entering into the subscription agreements at issue in this case.[5] *See* SEC Mot. Reply 3-4 (and citations therein). Reynolds has also previously relied on some of the same documents he now objects to. *See* Reynolds Resp. SEC Mot. Summ. J. at 4-6 (filed Apr. 14, 2011). Finally, Reynolds has provided no particular reason to doubt the records at issue.[6] As such, the Court considers the entirety of the SEC's Appendix in resolving the SEC's Motion for Summary Judgment.

B.  *Section 5 Liability*

---

[5]The SEC also notes that Reynolds pleaded the Fifth Amendment in response to the SEC's request that Reynolds authenticate the subscription agreements and brokerage records related to the MVBY, Alchemy, and BCI offerings. SEC Mot. Reply 3-4 (citing SEC Mot. App. 293, 295-297).

[6]At least one court has also explained that, on summary judgment, a court, in its discretion, may consider documents lacking proper authentication. *See, e.g., Enguita v. Neoplan USA Corp.*, 390 F. Supp. 2d 616, 624 (S.D. Tex. 2005) (citing *Eguia v. Tompkins*, 756 F.2d 1130, 1136 (5th Cir. 1985)).

A plaintiff may initially establish a prima facie case of a violation of Sections 5(a) and 5(c)[7] of the Securities Act by showing the following: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co. of S.C.*, 463 F.2d 137, 155 (5th Cir. 1972) (citations omitted). The Securities Act expressly provides that liability extends to "any person, directly or indirectly" who sells unregistered securities in violation of the Act. 15 U.S.C. § 77e(a). To determine whether or not a person is liable as a seller of securities, courts have assessed whether or not the defendant was a "necessary participant" or a "substantial factor" in the offering or selling of the unregistered securities. *SEC v. Friendly Power Co.*, 49 F. Supp. 2d 1363, 1372 (S.D. Fla. 1999) (quoting *SEC v. Holschuh*, 694 F.2d 130, 139 (7th Cir. 1982)).

Here, the SEC provides summary judgment evidence that Reynolds purchased 10 million shares of CAJ common stock for one cent per share, CAJ distributed these 10 million shares to

---

[7] Section 5 of the Securities Act, in relevant part, states the following:

(a) Sale or delivery after sale of unregistered securities. Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale . . . .
(c) Necessity of filing registration statement. It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security . . . .

15 U.S.C. § 77e(a), e(c).

Lugano Funds' brokerage account, and no registration statement was filed or in effect for the offer or sale of this stock by CAJ.[8] Reynolds then resold over 4.6 million shares of CAJ stock to the public, without any registration statement filed or in effect for Renold's distribution of CAJ stock.[9] SEC Mot. App. 34-41, 131, 171, 210, 378, 388-90. As such, the SEC has made a prima facia case of Reynolds' and Lugano Funds' violation of Section 5 through their unregistered offering of CAJ stock.

The SEC also provides summary judgment evidence that Reynolds purchased 8,500,000 shares of MVBY for $.005-$.07 per share in 2007 and 2008, MVBY distributed these shares to Bellatalia's brokerage accounts, and no registration statement was filed or in effect for the offer or sale of this stock by MVBY.[10] Reynolds then resold 7.73 million MVBY shares into the public market, without any registration statement filed or in effect for Reynolds' distribution of MVBY stock. SEC Mot. App. 1-30, 140-41, 176-77, 278-90, 384-87. As such, the SEC has made a prima facie case of Reynolds' and Bellatalia's violation of Section 5 through their unregistered offering of MVBY stock.[11]

Next, the SEC provides summary judgment evidence that Reynolds, through Bellatalia,

---

[8]Reynolds represented in the subscription agreement for the CAJ stock that the securities were being purchased "solely for [his] account, for investment purposes only and not with a view to the distribution of said Securities and not with a view to assignment or resale thereof." SEC Mot. App. 34, 131, 171.

[9]The SEC also describes Reynolds' involvement in a "nationwide promotional campaign touting CAJ stock." SEC Mot. Br. 4 (citing SEC Mot. App. 272-75).

[10]Reynolds represented in the subscription agreements for the MVBY stock that he would not engage in any activity that would constitute a distribution of the shares and had not offered or sold any of the shares with a view to reselling the shares, and that the offerings were exempt from registration. SEC Mot. App. 2, 8, 13, 19, 27, 141, 177.

[11]The SEC also describes how it brought suit against Reynolds on September 26, 2007 in *SEC v. Offill*, Civ. No. 07-cv-1643 (N.D. Tex.), for his involvement in a similar pump and dump scheme, but Reynolds later proceeded to participate in the Alchemy and BCI offerings, cognizant of the SEC's allegations. SEC Mot. Br. 6-7 (citing SEC Mot. App. 144, 179, 218).

purchased 4.33 million shares of Alchemy stock in December 2007 with no registration statement filed or in effect.[12] Bellatalia then sold 3.68 million shares of Alchemy into the public market, without any registration statement filed or in effect for this distribution of Alchemy stock.[13] SEC Mot. App. 42-54, 147, 181, 304, 379, 391-93. As such, the SEC has made a prima facie case of Reynolds' and Bellatalia's violation of Section 5 through their unregistered offering of Alchemy stock.

Finally, the SEC has provided summary judgment evidence that Reynolds, on behalf of Bellatalia, purchased 3,333,333 shares of BCI stock for $66,667, BCI distributed these shares to Bellatalia's brokerage account, and no registration statement was filed or in effect for the offer or sale of this stock by BCI.[14] Reynolds then sold over 1.5 million shares of BCI to the public, without any registration statement filed or in effect for this distribution of BCI stock.[15] SEC Mot. App. 57-62, 98, 152-56, 184-87, 372. As such, the SEC has made a prima facie case of Reynolds' and Bellatalia's violation of Section 5 through their unregistered offering of BCI stock. The Court now proceeds to examine Reynolds' arguments in opposition to the SEC's Motion for Summary Judgment regarding

---

[12] Reynolds represented in the subscription agreements for the Alchemy stock that he would not engage in any activity that would constitute a distribution of the shares and had not offered or sold any of the shares with a view to reselling the shares, and that the offerings were exempt from registration. SEC Mot. App. 43, 50, 147, 181.

[13] Reynolds, domiciled in Texas, offered and sold the stock at issue through orders placed with his Florida-based representative through a New York-based broker-dealer, thus establishing that interstate communication or mails were used in connection with the sales or offer of sales in this case. See SEC Mot. App. 68-111, 256.

[14] Reynolds represented in the subscription agreements for the BCI stock that he would not engage in any activity that would constitute a distribution of the shares and had not offered or sold any of the shares with a view to reselling the shares, and that the offerings were exempt from registration. SEC Mot. App. 58, 152, 184-85.

[15] The SEC also describes Reynolds' involvement in a "multimedia stock promotion campaign" touting BCI. SEC Mot. Br. 9 (citing SEC Mot. App. 366-71).

Section 5 liability.

### 1. CAJ Offering

Reynolds does not appear to contest his liability for the CAJ offering, only objecting to the SEC's calculation of disgorgement. The Court notes that Reynolds is collaterally estopped from contesting the facts upon which his criminal conviction was based. Collateral estoppel applies based on a criminal proceeding if: "(1) the issue sought to be precluded is identical to one decided in the prior action; (2) that issue was actually litigated in the prior action; (3) the determination of the issue was essential to the final judgment in the prior action; and (4) the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the prior action." *SEC v. Black*, 04 C 7377, 2008 WL 4394891, at *3 (N.D. Ill. Sept. 24, 2008) (citations omitted).

In the Florida criminal proceeding, Reynolds pleaded guilty to a single count of conspiracy to commit securities fraud based on allegations of his participation in a conspiracy to manipulate and artificially inflate the demand for and price of ConnectAJet stock. SEC Mot. App. 408. The SEC's Amended Complaint in the instant case alleges claims against Reynolds based on his participation in the CAJ scheme, in addition to three related pump and dump schemes. Because the facts underlying his participation in the CAJ conspiracy are virtually identical to those regarding CAJ in the instant case, because those issues were actually litigated and necessary to the final judgment in the prior action, and because Reynolds had a full and fair opportunity to litigate in the prior action, he is collaterally estopped from contesting any of those facts in this case. Overall, based on the SEC's summary judgment evidence, the Court finds that there is no genuine dispute of material fact as to Reynold's liability for violation of Section 5 in connection with the CAJ offering. As such, the Court **GRANTS** the SEC's Renewed Motion for Summary Judgment to the extent it seeks summary

judgment as to Reynold's Section 5 liability in connection the with CAJ offering.

## 2. MVBY, Alchemy, BCI offerings[16]

Reynolds does not set forth any specific arguments that the MVBY, Alchemy, and BCI offerings did not violate Section 5. Instead, he argues only that the SEC has not "set forth any argument, evidence or case law that would make Mr. Reynolds individually liable for any alleged acts of Bellatalia, LP and Lugano Funds, LLC" and that "[t]he SEC's own evidence creates fact issues surrounding the claims" regarding MVBY, Alchemy, and BCI. Reynolds Resp. 2. In his view, the SEC has merely argued that Bellatalia and Lugano Funds are proxies and that he is an owner of those companies, and such argument "does not constitute conclusive proof that he is personally liable for the actions of those companies." *Id.* at 3. Reynolds does not cite any evidence in support of his arguments.

The Court rejects these arguments. As previously discussed, to hold Reynolds liable for the MVBY, Alchemy, and BCI offerings, the SEC need only show that Reynolds was a necessary participant or substantial factor in the offering or selling of the unregistered securities. *See Friendly Power*, 49 F. Supp. 2d at 1372 (quoting *Holschuh*, 694 F.2d at 139). Further, several courts have found that liability should be jointly and severally shared among those who collaborate to violate the securities laws. *See, e.g., SEC v. United Energy Partners*, 88 F. App'x 744, 747 (5th Cir. 2004); *SEC v. Blackwell*, Civ. Action No. 3:11-cv-234-L 2012 WL 13564, *3 (N.D. Tex. Jan. 4, 2012); *SEC v. AmeriFirst Funding, Inc.*, Civ. Action No. 3:07-CV-1188-D, 2008 WL 1959843, *2 (N.D. Tex. May

---

[16]Given that Reynolds essentially admits liability based on the CAJ offering, the Court focuses on the parties' arguments and evidence regarding the MVBY, Alchemy, and BCI offerings. Given that the SEC claims that Lugano Funds was involved only with the offering of CAJ, the Court focuses on the actions of Reynolds and Bellatalia in resolving the MVBY, Alchemy, and BCI offering claims.

5, 2008).

Here, the SEC has shown, at a minimum, that Reynolds signed each of the subscription agreements on Bellatalia's behalf, and he has admitted that he is the sole owner and sole employee of Bellatalia. *See* SEC Mot. Reply App. Ex. 1; SEC Mot. App. 116. As such, Reynolds was a necessary participant or substantial factor in the unregistered offerings, and thus may be held liable individually for all of the offerings at issue in this case. Further, Reynolds has clearly collaborated with Bellatalia in carrying out the unregistered offerings such that joint and several liability is appropriate.

The Court also notes that Reynolds fails to identify any exemption from Section 5's registration requirement that would apply in this case, and the Court is not aware of any exemption that would potentially apply. Accordingly, the Court finds that there is no genuine issue of material fact as to whether the stock offerings at issue in this case were exempt from Section 5's requirements. *See Cont'l Tobacco*, 463 F.2d at 156.

The Court is mindful of the need to look at the substance of the MVBY, Alchemy, and BCI offerings and the purpose of the registration requirements: "to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *SEC v. M&A West Inc.*, 538 F.3d 1043, 1052-34 (9th Cir. 2008) (quoting *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953)). Viewing the facts in a light most favorable to the defendant while still viewing Reynolds' and Bellatalia's trading activity in its entirely, the Court finds that there is no genuine dispute of material fact as to whether the Reynolds Defendants participated in public offerings of MVBY, Alchemy, and BCI stock in violation of Section 5. Nor is there any genuine dispute of material fact

as to whether these offerings were exempt from the registration requirements.[17] As such, the Court **GRANTS** the SEC's Motion to the extent it seeks summary judgment as to the Reynolds' Defendants liability under Section 5 as a result of the MVBY, Alchemy, and BCI offerings. As the Court has found that the Reynolds Defendants are jointly and severally liable for their violations of Section 5, the Court now turns to the appropriate remedies.

C.  *Remedies*

   1.  Permanent Injunction

The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws and (2) a reasonable likelihood that the wrong will be repeated. *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004). In determining whether there is a reasonable likelihood of future violations, courts look to factors including:

> [The] egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations.

*Id.*

Reynolds does not dispute the SEC's request for a permanent injunction. Further, the Court finds that Reynolds' participation, and the participation of Bellatalia and Lugano Funds, in the pump and dump schemes at issue is egregious behavior that the Reynolds Defendants engaged in with at

---

[17] The SEC argues that the Court may make an adverse inference against Reynolds for refusing to testify on Fifth Amendment grounds. The Court does not reach this issue at this time as the Court finds that there is no genuine issue of material fact regarding whether he violated Section 5 of the Securities Act even without a finding that Reynolds' refusal to give testimony based on Fifth Amendment grounds gives rise to an adverse inference against him.

least reckless disregard for regulatory requirements, if not knowingly, and it appears that Reynolds has engaged in multiple securities law violations in this case and at other times. *See, e.g., SEC v. Offill*, Civ. A. No. 3:07-CV-1643-D, 2012 WL 246061, *6 (N.D. Tex. Jan. 26, 2012) (finding Reynolds liable for violation of Section 5 in separate pump and dump schemes). The Court recognizes that Reynolds is currently incarcerated and is thus unlikely to violate the securities laws in the immediate future. Nevertheless, in light of the Reynolds Defendants' conduct in this case[18] and the factors set forth in *SEC v. Calvo*, a permanent injunction as to Reynolds, Bellatalia, and Lugano Funds is necessary to protect the public from future securities violations.

    2.    <u>Disgorgement</u>

A court may order a party to disgorge profits flowing from securities law violations in order to prevent the wrongdoer from enriching himself by his wrongs. *See, e.g., SEC v. Huffman*, 996 F.2d 800, 802-03 (5th Cir. 1993). Once the SEC has established that a defendant violated securities laws, a court may order the defendant to disgorge a sum of money equal to all the illegal payments he received. *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985). The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation, and then the burden shifts to the defendant to show that this figure is not a reasonable approximation. *See, e.g., Amerifirst*, 2008 WL 1959843, at *2 (citation omitted). A court enjoys broad discretion in determining the amount to be disgorged. *See, e.g., SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996). Further, "any risk of uncertainty in calculating

---

[18]The Court also notes that Reynolds is a former stock broker who, in 2003, was barred by the National Association of Securities Dealers from association with any NASD member in any capacity. SEC Mot. Ap. 128, 169.

disgorgement should fall on the wrongdoer whose illegal conduct created that uncertainty." *SEC v. Patel*, 61 F.3d 137, 140 (2d Cir. 1995) (citation omitted). Moreover, if the SEC "shows a causal relationship between the defendant's wrongdoing and the amount by which he was unjustly enriched, that amount of money may be disgorged even if the defendant has otherwise disposed of, reinvested, or spent the particular assets that he wrongfully obtained." *SEC v. Seghers*, 298 F. App'x 319, 336 (5th Cir. 2008).

The SEC proposes a modified First In, First Out ("FIFO") methodology to calculate the Reynolds Defendants' disgorgement, which this Court has already approved in this case in connection with the Fleming Defendants and Wynn Defendants. *See* SEC Mot. Br. 21; SEC Mot. App. 373-93; Mem. Op. July 11, 2013 at 5-6. Applying this methodology, SEC Staff Accountant John Kustusch calculates that the Reynolds Defendants profited $3,175,405 from the CAJ offering; $3,993,303 from the MVBY offering; $2,346,480 from the Alchemy offering; and $1,016,037 from the BCI offering, for a total of $10,531,225. SEC Mot. App. 31-33, 41, 55-56, 63, 376-80, 383-93. Aside from arguing that he should not be liable for disgorgement as to the MVBY, Alchemy, and BCI offerings and arguing that the SEC's documents are not properly authenticated, contentions already rejected by the Court, Reynolds argues that the SEC must prove his profits as a matter of law, and that a "reasonable approximation" is insufficient, precluding summary judgment as to the disgorgement amount.

Reynolds' arguments fail. As discussed above, the Court has already determined that the Reynolds Defendants violated Section 5 in connection with the CAJ, MVBY, Alchemy, and BCI offerings and are jointly and severally liable for such violations. As discussed by the SEC, and as set forth in relevant case law, in requesting disgorgement, the SEC need only provide a reasonable

14

approximation of the Reynolds Defendants' ill-gotten gains, rather than prove such figure as a matter of law. *See, e.g., SEC v. Amerifirst*, 2008 WL 1959843, at *2. Further, the SEC has shown that the requested disgorgement amount reasonably approximates the Reynolds Defendants' ill-gotten gains from their participation in the unregistered offerings, and the Reynolds Defendants have not met their burden to show that this figure is unreasonable. As such, the Court hereby **ORDERS** disgorgement against the Reynolds Defendants, jointly and severally, in the amount of $10,531,225.

3.  Prejudgment Interest

The SEC also requests prejudgment interest on ill-gotten gains. The Court may award prejudgment interest on disgorgement amounts, in its discretion, in order to prevent parties from benefitting from what is, in essence, an interest-free loan resulting from illegal activity. *See, e.g., SEC v. Jakubowski*, No. 94 C 4539, 1997 WL 598108, at *2 (N.D. Ill. Sept. 19, 1997) (citation omitted). In federal securities cases, courts generally calculate prejudgment interest by applying the underpayment rate published by the Internal Revenue Service ("IRS"). *See, e.g., SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007).

Using the IRS' statutory interest rates on the disgorgement amount above,[19] the SEC calculated the Reynolds Defendants' prejudgment interest at $2,349,995 for the period ending May 31, 2013. SEC Mot. App. 380, 394-98. Reynolds does not object to the SEC's calculation of prejudgment interest other than to argue that he should only be liable for prejudgment interest as to any disgorgement amount in connection with the CAJ offering, and not for any disgorgement as to the MVBY, Alchemy, and BCI offerings. The Court rejects this argument as it has already

---

[19]*See* SEC Mot. App. 380, 394-98 (setting forth IRS statutory interest rates and methodology for calculating prejudgment interest).

determined that the Reynolds Defendants are jointly and severally liable for the CAJ, MVBY, Alchemy, and BCI offerings. As such, in its discretion, the Court finds that the Reynolds Defendants should pay the SEC's requested prejudgment interest amount. Accordingly, the Court hereby **ORDERS** the Reynolds Defendants to pay $2,349,995 in prejudgment interest.

  4.  Penny Stock Bar

  Finally, the SEC requests a permanent penny stock bar against the Reynolds Defendants. The Securities Act provides that a penny stock bar is appropriate in actions "against any person participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock." 15 U.S.C. § 77t(g)(1) (2012). The Act defines a "person participating in an offering of penny stock" to include "any person engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to induce the purchase or sale of, any penny stock." *Id.* §77t(g)(2). In determining whether a penny stock bar is appropriate, a court considers: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Offill*, 2012 WL 1138622, at *5 (quoting *SEC v. Elliott*, 2011 WL 3586454, at *14 (S.D.N.Y. Aug. 11, 2011)) (internal quotation marks omitted).

  Here, the Reynolds Defendants have participated in multiple penny stock schemes, and they also held a central role in these schemes, resulting in millions of dollars of ill-gotten gains. Reynolds also concedes that he violated Section 5 and pled guilty to a conspiracy to commit securities fraud in connection with the CAJ offering. Finally, Reynolds does not contest the SEC's request for a penny stock bar. In light of these and all other relevant factors, the Court finds that a permanent

penny stock bar against Reynolds, Bellatalia, and Lugano Funds is appropriate to protect the investing public from future violations of the securities laws. *See Offill*, 2010 WL 1138622, at *5.

### III.

### CONCLUSION

For the reasons discussed above, the Court **GRANTS** the SEC's Renewed Motion for Summary Judgment as to the Reynolds Defendants (doc. 331). The Reynolds Defendants are hereby **ORDERED** to disgorge, jointly and severally, $10,531,225, and pay $2,349,995 in prejudgment interest thereon. The Reynolds Defendants are permanently **ENJOINED** from violating Section 5 of the Securities Act. In addition, the Reynolds Defendants are hereby permanently **BARRED** from engaging in the trade of any penny stock. The Court will issue a final judgment as to the Reynolds Defendants setting forth this relief in a separate order.

SO ORDERED.

DATED: July 19, 2013.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE